MCKINLEY MORRIS, *alias* O. C. WILSON V. THE STATE.

No. 21849. Delivered January 28, 1942.
Rehearing Denied February 25, 1942.
Petition for Writ of Certiorari denied by United States Supreme Court.

The opinion states the case.

*Frank Morris* and *Anthony L. Noren,* both of Dallas, for appellant.

*Chas. A. Pippen,* Assistant District Attorney, of Dallas, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted of the murder of W. C. Jones and the penalty assessed was death.

According to the evidence introduced by the State, the deceased was the night operator of a gasoline station on Gaston Avenue in the City of Dallas. On the early morning of Wednesday, March 26, 1941, a customer, who arrived at the station just before daylight, found Mr. Jones lying on a desk inside of a small office with his head crushed and in a serious condition from which he died late in the evening. Sometime before six o'clock

on the same afternoon appellant was arrested by officers and taken to the police station. On the way he told them the story of the murder, and after arriving at the station, a written statement was prepared which he signed in the presence of a large number of people, two of whom testified in the case that they signed it as witnesses.

According to the statement, appellant spent the night in an attic, where he had previously slept, over the office, and in the early morning came down. Finding Mr. Jones resting on the desk he decided to get some money that was usually kept in a cigar box. As he did so, Mr. Jones moved and appellant picked up an iron bar used as a handle in a jack and struck him over the head twice. About this time he saw a newsboy delivering the morning paper. He met him at the door, opened it in part and took the paper and propped it up against the window with a book. He then left the station, went to a pawnshop and purchased some clothes for which he said he paid a little over twelve dollars in cash. He detailed the events of the day up until the time of his arrest. He told the officers that he had dropped the jack handle in a certain gasoline tank.

The boy who delivered the paper was called as a witness and told of going to the place at his usual time and through the glass door saw Mr. Jones lying on the desk. He also saw the appellant who opened the door partially and received the paper. He saw no one else there.

The officers had appellant show them the tank in which he dropped the handle and they recovered it therefrom. They also found the newspaper in the position appellant described. The pawnbroker was called as a witness and identified the appellant as the party who came to his place at about 7:15 o'clock on the morning of March 26th and purchased a pair of shoes, a khaki uniform, hat, sweater, a pair of gloves and a suit case for the sum of $14.85. He also bought a watch which he returned in the afternoon and pawned it for one dollar, giving his name as McKinley Morris. He had worked at the station under the name of O. C. Wilson and was commonly known as "O. C."

The record is before us without bills of exception and without any complaint of the procedure, but is presented solely

on the ground that the evidence is insufficient to warrant the jury in returning a verdict against him.

Appellant testified in his own behalf and said that he was twenty-two years of age, and had lived in Dallas all his life. He told of different parties whom he had been working for, and lived at the home of his father. He denied the killing but said that he had worked with Mr. Jones, who had been nice to him. He knew that Jones kept the money in the little cigar box. He said he slept in the attic on Monday night but not on Tuesday night; that instead he had spent Tuesday night in a room with his girl friend at a colored hotel and left early in the morning and went to the filling station to get a bumper which he had promised to repair for Mr. Jones and there found another negro named Sam, whom he described, and said that Sam did the killing over his protest; that he left the place under Sam's direction, which was emphasized with threats to kill and at the point of a pistol. He said that he made his way up the railroad track, got a telephone and 'phoned the police station and told them there had been a fight out on Gaston Avenue but did not give the street number. In an effort to identify Sam, he told of seeing him there on former occasions, once while Mrs. Jones was present, and of his promise to return at a certain time to haul some furniture for the deceased. He told of having bought things at the pawnshop but said that he got the money at his home where he had it hid under a rug, and that he was preparing to go to the Army that day. He said that when he was arrested and on the way to the police station, one of the officers cursed and beat him and forced him to make the statement; that a great many things in the statement were placed there without his consent and that he was forced to sign it.

In rebuttal the State brought to the witness stand a negro named Sam, whom appellant said was not the one who did the killing but who was identified by Mrs. Jones as the party who had been around the station and had promised to haul furniture in her presence and in appellant's presence in keeping with the statement which appellant gave about the "Sam" he referred to. The owner of the station also identified this party as being the one who had been around the station quite a good deal. He was called "Sam" and said that no other person had been around there who was known by that name.

The witnesses who signed as such the written confession

testified and denied the use of force and corroborated the officers in detail. In a general way, practically everything that was said by appellant on the witness stand was controverted by witnesses, either directly or by circumstances so far as such statements were material to his defense. The night manager of the hotel brought his register and denied that appellant and his girl friend had spent the night there preceding the killing but said that they had been there on Saturday night before that time. The negro Sam testified and denied in toto his presence and the allegations made by appellant. The police sergeant denied a call being made for the officers which appellant claimed to have turned in. The officers testified and denied the use of force in obtaining the confession.

A complete issue of fact was presented to the jury who found against appellant and assessed the death penalty. This court has no jurisdiction to disturb their finding in the absence of some question of law being presented.

The attorney who tried the case has retired from it. Another has filed a paper denominated "Defendant's Application for a Writ of Certiorari to the Criminal District Court of Dallas County, Texas," but it is not revealed by this paper just what records he intends to bring up to complete the statement of facts. It is before us in a narrative form of statement as required by law. It is properly certified to be all the facts of the case. From the brief filed it is stated that he wants the statement of facts brought up in question and answer form. This court would not be permitted to consider a statement of facts in question and answer form, and it is our duty to consider the statement before us, which is signed by the attorneys for the State and for the appellant and approved by the court as being twenty-seven pages and containing "a full, true and correct statement of all the facts admitted in evidence by the Court upon the trial of this cause."

Having no question of law presented and finding no error in the proceedings, this court has no jurisdiction to pass on any matter which is presented in the appellant's brief, and the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

We have again carefully gone over the record and the state-

ment of facts filed, signed by the attorneys and approved by the court, herein.

Appellant complains in his motion because of the fact that although the appellant testified that he was abused, beaten and mistreated by three officers, the State only placed one of such officers upon the witness stand, and although such officer denied such mistreatment, he says this cause should be reversed because of the State's failure to place the remaining two officers on the stand to deny such mistreatment.

In appellant's testimony we only find the name of one of the two absent officer witnesses mentioned twice when appellant stated that officer Buchanan slapped him and said: "What did you do with that Jack handle?" Appellant then said: "They got me down to the city hall and beat me up. One of them hit me with his fist. * * * They hit me on the side and back also, trying to make me own I did the killing." That just before he signed the same Mr. Buchanan caught him in the collar and hit him and threatened to put his father and sister in jail, and "shoot his heart out," at which time he agreed to "sign the paper (confession) if he will not bother my daddy." However the appellant denied having told Inspector Fritz many things that appeared in the written confession introduced in evidence, saying that the inspector put them in the confessioon without any grounds therefor.

W. B. Egan testified that he was at the city hall at about 5:30 o'clock in the afternoon, and he, in company with Kenneth Hand, heard the warning given the appellant by Inspector Fritz, heard him read the statement over to appellant, heard the appellant say that it was true, and he witnessed the same. "There was no force, threats or duress in any manner used to compel this defendant to make this statement. In fact, everybody seemed to be in good humor."

Kenneth Hand, a newspaper man, was on duty at the city hall in Dallas when appellant was brought in by the officers, in the afternoon of March 26, 1941, and saw appellant when he was brought in by the officers. "I was present from the time the officers took the defendant out of the automobile until after the statement was made and signed by the defendant. "There were no threats or acts of abuse or anything done down there by anybody to compel this defendant to make this statement, but it was freely and voluntarily made. After the

statement was typed, the warning and everything was read to the defendant and he said it was correct and signed his name in my presence. There were no bruises or marks on the defendant to indicate he had been mistreated or induced in any way to sign this statement which was made between 5:45 and 6 o'clock."

Inspector Fritz testified that he was with the arresting officers when they took appellant into custody, and rode with them to the city hall; that no one struck appellant nor threatened him in anyway; that appellant told them how he had disposed of the money gotten in the robbery, and also told of having disposed of the jack handle by dropping same into a gasoline tank, from which tank it was later recovered some days thereafter. He absolutely and unqualifiedly denied any mistreatment, threats or coercion of any kind being used by anyone on appellant to obtain this statement. "No one struck the defendant and no one threatened to kill him. No drastic means or methods were used to get him to tell us these things."

We do not think it was demanded of the State that they should have also placed the two other peace officers on the stand to testify to the same things that three witnesses had already testified to.

We see no reason for receding from our views expressed in the original opinion. The motion will therefore be overruled.