Hector Torres GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 71148.

Court of Criminal Appeals of Texas, En Banc.

April 13, 1994.

Rehearing Denied Sept. 21, 1994.

Joseph A. Connors, III, Norman McInnis and Dorina Ramos, McAllen, for appellant.

Rene Guerra, Dist. Atty. and Theodore C. Hake, Asst. Dist. Atty., Edinburg, Robert Huttash, State's Atty., Austin, for State.

### OPINION

MEYERS, Judge.

Appellant was convicted in July 1990 of capital murder under Texas Penal Code § 19.03(a)(2) for a murder committed in August 1987 during the course of a robbery. After the jury returned affirmative findings to the two special issues submitted pursuant to Art. 37.071(b) of the Texas Code of Criminal Procedure, appellant was sentenced to death under Art. 37.071(e).[1] Direct appeal to this Court is mandated by Art. 37.071(h). We will affirm.

### I. Sufficiency of the Evidence

■ Appellant challenges, in point twenty-seven, the sufficiency of the evidence to convict him of capital murder. Appellant disputes the sufficiency of the evidence to establish beyond a reasonable doubt that 1) he specifically intended to kill the victim, 2) he was the person who shot the victim, and 3) he committed the murder in the course of robbery. Appellant also challenges the sufficiency of the evidence to corroborate the testimony of accomplice Eduardo Morales. While this latter contention is multifarious, we will address these arguments in the interest of justice. *E.g., Thomas v. State,* 723 S.W.2d 696, 697 n. 2 (Tex.Crim.App.1986); *but see* Tex.R.App.P. 74(d).

■ A sufficiency review requires that, while viewing the evidence in the light most favorable to the verdict, we ask whether any rational trier of fact could have found beyond a reasonable doubt all of the elements being challenged. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Nelson v. State,* 848 S.W.2d 126, 131 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993).

---

**1.** All article references are to the Texas Code of Criminal Procedure unless otherwise cited.

The record, viewed in a light most favorable to the jury's verdict, establishes the following: Adelmina Rios, the victim's seventeen year old sister, testified that on August 25, 1987, she was working the 4–10 p.m. shift at an L & M Mart located about ten miles north of Edinburg, Texas. Her fourteen-year-old brother, the victim, joined her at the store around 9:15 p.m. to keep her company and buy some hot dogs and a drink. At about 9:30 p.m. two men entered the store. Ms. Rios was behind the counter, and her brother was sitting at the end of the counter eating his hot dogs. The first man walked around the store looking into the coolers and brought a soft drink to the counter. The second man, subsequently identified as appellant, also walked around the store looking in the coolers. He apparently was stalling, waiting for the other customers to leave. Appellant, retrieving a beer, asked the first man whether he wanted a beer. According to Ms. Rios, the store was well lit, her eye sight was good, and she could see appellant clearly and without obstruction; she remembered particularly his face. She identified appellant as the second man—the man who killed her brother.

After retrieving the beer, appellant walked down the middle aisle. Ms. Rios removed her focus from appellant but momentarily turned back to look at him when she heard him say something. When she turned around he was standing at the end of the counter with a gun to her brother's face. Though appellant had mumbled, she understood that it was a robbery, since appellant's free hand was extended, waiting to receive the money. Ms. Rios testified that her focus at this point was on appellant's face. She begged him not to hurt them; her brother sat trembling, the gun in his face. Neither Ms. Rios nor her brother offered any resistance or made any gesture denoting resistance. As she turned to empty the cash register, she heard appellant fire the gun and saw that appellant had shot her brother in the head; the boy fell gasping for air, vomit-

ing, and bleeding. Appellant again demanded the money. She took the paper money and walked toward him, her focus again fixed on his face, and he moved toward her. As she handed appellant the money, some fell to the floor, and appellant bent over to pick up the money. As he stood back up, appellant shot Ms. Rios. Thinking that she had only been grazed, Ms. Rios fell, feigning death to avoid being shot again by appellant. She waited.[2] When the Sheriff's deputies arrived, she realized that she had been shot in the stomach. Later she learned that the bullet had gone through her, exiting through her back. She had been seriously injured and was immediately hospitalized.

Ms. Rios testified that she had a clear view of appellant most of the time that he was in the store. She noted that after realizing that she was being robbed, her focus was on his face. She accurately described appellant to the police and later identified him from a photo lineup; she explained that upon seeing appellant's picture she experienced a memory flashback of the gunman's face and was certain that appellant was the gunman who had shot her and killed her brother. Rogelio Garcia, an employee of E.M.S., testified that he attended to Ms. Rios on the night of the murder. He testified that she had been conscious, alert, very calm, and concerned about her brother—that she had known where she was and what had happened. Deputy Sheriff Jeff Rivers testified that he was dispatched to the scene of the crime and that Ms. Rios had been calm and spoke to him in a normal tone of voice; she told him what had happened and had given him descriptions of the two men.

Dr. Ruben Santos, testifying that he performed the autopsy of the deceased, stated that the boy had suffered a "close-range," gunshot to the right side of his head. "Close-range," he explained, means that the barrel of the weapon was no more than four feet from the victim's head. Dr. Santos stated that his internal examination showed that the bullet severely damaged the victim's

2. The evidence indicated that after appellant shot the victim, his accomplice ran from the store in shock and/or panic. Ms. Rios testified that her focus remained on appellant.

brain; he found no other condition which contributed to the boy's death. The victim died from the wound caused by the close-range gunshot to his head.

Ofelia Morales, appellant's sister-in-law, testified that sometime after the date of the offense she overheard appellant telling someone over the telephone that he had killed a boy, that the boy had "bounced like a dog and screamed like a sheep" and that his eyes had been wide open as he lay dying. She heard appellant say that it was at a store. He also said that "the other ones's eyes were also wide open." Ms. Morales testified that when she asked appellant what he had been talking about, he merely laughed. She asked again, and he then told her that he had killed a boy and repeated that the boy had "bounced like a dog and cried like a sheep." She asked him why he had done such a thing; he responded that he did not know, verbally abused her, and told her that it was none of her business. Appellant then produced a gun, held it at Ms. Morales' head and warned her against telling anybody of what she had heard or he would kill her. She explained that she did not reveal the incident to anyone for fear of appellant.

■ A rational trier of fact could find beyond a reasonable doubt that appellant intentionally killed Eduardo Rios. The specific intent to kill may be inferred from the use of a deadly weapon. *Godsey v. State,* 719 S.W.2d 578, 580–81 (Tex.Crim.App.1986). In the present case not only did appellant enter the store carrying a deadly weapon, he held it to the victim's head, and without provocation shot the boy at "close-range" in the head. Appellant then completed the robbery, shot his second victim and fled from the scene. *See Thompson v. State,* 691 S.W.2d 627, 630 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985) (acts of entering the scene carrying a deadly weapon, shooting victim at close range, and then fleeing support finding of intentional killing).

The evidence also supports the jury's finding that appellant was the person who shot the victim. Ms. Rios testified as an eyewitness that appellant was the gunman who shot her brother. This is direct evidence of appellant's identity. Ms. Rios consistently identified appellant as the man who shot her brother. He was the one identified as holding a gun to her brother's head when the shot was fired. He was identified as the gunman who shot her. Ms. Morales testified that appellant told her he had shot a boy and described the killing to her. A reasonable jury could find from this evidence that appellant was the person who shot the victim.

The evidence also supports the finding that the murder was committed while in the course of robbery. Appellant held the gun to the victim's head with hand extended to receive the money he had ordered Ms. Rios to surrender to him. As she turned to get the money, appellant shot Eduardo Rios, and then repeated his command to Ms. Rios to turn over the money. There is no clearer example of a murder committed in the course of robbery. *See Green v. State,* 840 S.W.2d 394 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993) (Murder in the course of robbery).

■ Appellant's challenge to the sufficiency of the evidence to corroborate the testimony of accomplice witness Eduardo Morales is puzzling in several respects. First, as the State notes, it is unclear whether Morales was indeed an accomplice; we assume for argument that he was. Second, Art. 38.14 requires the corroboration of accomplice "testimony," but Mr. Morales' testimony consisted of a denial of any involvement in the offense and complete refutation of his prior incriminating statements. Apparently, appellant is arguing that under Art. 38.14 not only testimony but also an accomplice's prior incriminatory statements must be corroborated whenever introduced into evidence. We do not reach this question because even if we held that an accomplice's prior inconsistent statements must be corroborated, we believe that the evidence recounted above is more than sufficient to corroborate the statements. Art. 38.14 requires only evidence

tending to connect appellant with the offense. *Munoz v. State,* 853 S.W.2d 558, 559 (Tex. Crim.App.1993).

The evidence, even without Eduardo Morales' statements, was sufficient to convict appellant; it certainly tends to connect him to the offense. Since the evidence, absent accomplice testimony, is sufficient to convict appellant of the offense, it is sufficient to corroborate accomplice testimony which is a lower standard. Appellant's twenty-seventh point of error is overruled.

■ Point of error twenty-eight challenges the sufficiency of the evidence to affirmatively answer the two special punishment issues. Art. 37.071(b). Appellant asserts that the evidence was insufficient to prove beyond a reasonable doubt that he acted "deliberately and with reasonable expectation that death" would result. Art. 37.071(b)(1). Recently, in *Johnson v. State,* 853 S.W.2d 527, 531 (Tex. Crim.App.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993), we explained:

> The facts at the guilt stage of the trial alone can often be sufficient to support the affirmative finding of the jury to the special issues at the penalty stage of the trial. *Williams v. State,* 773 S.W.2d 525, 538 (Tex.Crim.App.1988), *cert. denied,* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989). "A jury must find 'a moment of deliberation and the determination [by] the actor to kill' before it is justified in answering 'yes' to special issue number one." *Kinnamon v. State,* 791 S.W.2d 84, 95–96 (Tex. Crim.App.1990). The determination of deliberateness must be found from the totality of the circumstances.

The State re-offered for punishment purposes all the evidence introduced at the guilt phase of the trial.

Reviewing the evidence in the light most favorable to the verdict, we hold that the evidence was sufficient for the rational trier of facts to find that appellant acted deliberately and with the expectation that death would result when he shot the victim. The evidence showed that appellant entered the store with a deadly weapon, that he demanded the money from the cash register as he held the gun to the victim's face, that he shot the victim at close range in the head without provocation, that after taking the money from Adelmina Rios, he shot her and then fled the scene. The jury could from these facts find that appellant acted deliberately and with reasonable expectation that the death of the victim would result. See *Callins v. State,* 780 S.W.2d 176, (Tex.Crim.App. 1986), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (Where defendant entered bar with loaded firearm, robbed occupants and announced intention to shoot, there was sufficient evidence of deliberateness).

■ Appellant also challenges the sufficiency of the evidence to affirmatively answer that there is a probability that he would commit criminal acts of violence that would constitute a continuing threat to society. Art. 37.071(b)(2) (second special issue). The State counters that the facts of the case alone are sufficient for a finding that appellant is a continuing threat to society, but also points to other evidence offered as proof that appellant poses a continuing threat to society.

The State points to the evidence of appellant's continued dangerous behavior after the offense, i.e., his holding a gun to Ofelia Morales' head while threatening to kill her if she disclosed to anyone that he had killed a boy, and his similar threats to Eduardo Morales, both of these being threats to appellant's own family. The State also introduced evidence of appellant's complete lack of remorse, as evidenced in his description of his fourteen year-old victim's death as that of an animal and laughing when asked why he done such a thing. The State also points out appellant's long history of criminal misconduct, i.e., his total disregard for the law. Appellant was convicted of possession with intent to distribute fifty-eight pounds of marihuana, absconded while on probation, and violated the conditions of probation by possessing firearms.

Furthermore, appellant failed to appear at an agreed deportation. The State presented evidence that deputies found while searching appellant's residence a stolen .12–gauge double-barrelled shotgun; a number of different caliber of live rounds, and a .22–caliber handgun. Reviewing the evidence in the light most favorable to the verdict, we hold the evidence supports the jury's finding that appellant is probably a continuing danger to society. *See Narvaiz v. State,* 840 S.W.2d 415, 424 (Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993); *see also, Brock v. State,* 556 S.W.2d 309, 316 (Tex.Crim.App.1976), *cert. denied,* 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1974). Appellant's twenty-eighth point of error is overruled.

## II. Pretrial

In points of error twenty-three and twenty-four appellant asserts that the trial court erred in denying paragraphs "III" and "II", respectively, of his motion to quash. Appellant offers no legal argument or authority supporting his points; he merely quotes his conclusory assertions under paragraphs III and II of his motion to quash.[3] As these points are inadequately briefed, we will not review their substance. *See, e.g., State v. Gonzalez,* 855 S.W.2d 692, 697 (Tex. Crim.App.1993), *Goodwin v. State,* 799 S.W.2d 719, 723 n. 1 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991); *Coble v. State,* 871 S.W.2d 192, 201–02 (Tex.Crim.App.1993); Tex.R.App.P. 74(f). Points of error twenty-three and twenty-four are overruled.

Point of error twenty-five asserts that the trial court erred in overruling appellant's Motion to Suppress Evidence. Appellant asserts that he cannot formulate an argument under this point because he cannot find the parties' arguments, the presentation of evidence or the court's ruling on his motion. The State offers that appellant's Motion to Suppress Evidence is found in the record with the proposed order unsigned.

The record reflects that on July 6, 1990, the trial judge asked for an outline of the suppression issues. After hearing evidence regarding appellant's motion to suppress, the judge took the matter under advisement, making no ruling on the matter in part because the State assured him that it did not anticipate using the evidence in question. The State agreed to file a memorandum of law in the event that it decided to introduce the evidence. Apparently, no final ruling in appellant's Motion to Suppress Evidence was ever made; nor does appellant assert that the questioned evidence was ever introduced.

As he presents neither an issue nor an argument for our review, appellant's twenty-fifth point of error is overruled. *E.g., Darty v. State,* 709 S.W.2d 652, 655 (Tex.Crim.App. 1986) (Specific ruling on objection must appear in the record to preserve error). Tex. R.Crim.Evid. 103(a); Tex.R.App.P. 52(a).

## III. Jury Selection

In point of error five, appellant asserts that the trial court erred in improperly excusing various venirepersons merely because they voiced opposition to the death penalty. Appellant cites *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), and *Her-*

---

**3.** Our review of the indictment, appellant's motion to quash, and the record of the hearing reveals that appellant's contentions are entirely without merit. The indictment reads in pertinent part "while in the course of committing and attempting to commit the offense of robbery of Adelmina Rios, the said defendant did then and there intentionally cause the death of Eduardo Rios...." Appellant's Motion to Quash in paragraph II complains that the indictment fails to allege capital murder because it fails to allege that the murder was "committed to further the commission of the felony." In paragraph III, appellant complains that the indictment is "ambiguous and unclear whether the deceased ... named in the indictment as the victim, was part of the same and continuous assaultive act as the underlying felony that is alleged in the indictment." During the pretrial hearing on January 9, 1990, Judge Murray denied appellant's motion.

*nandez v. State,* 757 S.W.2d 744 (Tex.Crim. App.1988).[4]

◼ In reviewing a trial court's decision to dismiss a venireperson upon a challenge for cause, considerable deference is given to the trial court because it is in the best position to evaluate the venirepersons; the trial court benefits from observation of the venireperson's demeanor and responses while an appellate court has only the cold record. *Cantu v. State,* 842 S.W.2d 667, 681 (Tex.Crim.App.1992), *citing, Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). When a potential juror's answers are vacillating, unclear, or even contradictory, the trial judge's observation is particularly important. *Cantu,* 842 S.W.2d at 682. In reviewing the trial judge's decision to sustain a challenge for cause, we ask whether the totality of the voir dire testimony supports the trial judge's finding and only if a clear abuse of discretion is demonstrated will we reverse. *Id.*

◼ Regarding venireperson Bernal, the record reflects that she indicated on her juror questionnaire that she could never return a verdict assessing the death penalty. During her voir dire, she reasserted that even if the evidence showed a defendant to be guilty, she could not find him guilty knowing that it would ultimately lead to his execution. She also asserted that if a negative answer to one of the special issues would prevent the death penalty, she would answer in the negative regardless of the evidence. The judge's decision is supported by the record.

◼ Venireperson Cuellar's voir dire reveals that from the beginning she was doubtful of her ability to carry out her duties because of her belief that no one has the right to take another's life. Ms. Cuellar said that she could not answer "yes" to the special issues even if convinced beyond a reasonable doubt that the answer should be yes, but then she stated that she could answer the special issues truthfully. However, Ms. Cuellar then stated that if chosen foreman of the jury she would not sign the verdict if it

meant that the defendant would be sentenced to death. Upon further questioning, the venireperson again returned to her position that she could not answer affirmatively the special issues, despite the evidence, if it meant a death sentence. She explained that she strongly believed that she had no right to sit in judgment of another. This record supports the trial judge's decision to remove the venireperson.

◼ Appellant next complains of venireperson Arguelles. Initially, Ms. Arguelles indicated that she could carry out her duties as a juror. She indicated that she was very nervous and needed a little time to consider her answers to the State's questions. When asked if she could sign the verdict knowing that it would lead to death if chosen jury foreman, Ms. Arguelles indicated that she could not sign the verdict; but, when asked by appellant's counsel, she stated that she could sign the verdict. Upon being asked her feeling on the death penalty, Ms. Arguelles answered that she did not believe the death penalty to be correct but that she could not really answer why she felt that way. When asked again if she could answer the special issues affirmatively, the venireperson stated that she would correct her former statements—that she could not answer the special issues affirmatively knowing that the death penalty would result. When appellant's counsel asked her if she could set aside her personal feeling and perform her legal duty, she replied that she could not. The record supports the trial court's excusal of Ms. Arguelles.

◼ Appellant complains next of venireperson Ortega's dismissal. The record establishes that Ms. Ortega was unequivocal in her opposition to the death penalty and about her inability to carry out the law. She stated from the beginning that she could not affirmatively answer the special issues despite the evidence if it meant that a defendant would receive the death sentence. When asked by appellant's counsel whether she could envision any case where she could an-

4. *Hernandez* was overruled by *Fuller v. State,* 829 S.W.2d 191, 200 (Tex.Crim.App.1992).

swer the special issues affirmatively, Ms. Ortega stated that she could not. The record supports the trial court's determination.

 Finally, appellant challenges the excusal of venireperson Guzman. Ms. Guzman stated that she did not believe in the death penalty, but that she could not say whether she could answer affirmatively the special issues because she also believed that criminals should be punished. When asked if her views would interfere with her duties as a juror, she replied twice that they would. She responded unequivocally to appellant's questioning, that she would automatically vote negatively on the special issues to avoid the death penalty regardless of the evidence. The Court was within its discretion in excusing the venireperson.

The record reflects that the venirepersons complained of by appellant were properly dismissed on the grounds that their views prevented or substantially impaired the performance of their duties as jurors in accordance with the instructions given and the oaths taken. *See Nelson v. State,* 848 S.W.2d 126, 134 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993). Appellant's fifth point of error is overruled.

 In points of error six and seven, appellant complains that the trial court erred in overruling various challenges for cause which he made at trial. The State counters that appellant employed only twelve of his peremptory challenges, thus failing to preserve error.

Indeed, the record reflects that appellant did not exhaust his peremptory challenges. In appealing the trial court's denial of a challenge for cause, an appellant cannot show harm unless he exhausts all of his peremptory challenges. *Hathorn v. State,* 848 S.W.2d 101, 110 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993), *citing, Demouchette v. State,* 731 S.W.2d 75, 83 (Tex.Crim.App.1986) *cert. denied,* 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). Accordingly, since ap-

pellant cannot show harm, his sixth and seventh points of error are overruled.

 Point of error eight voices appellant's contention that the trial court committed reversible error in dismissing for cause two jurors who stated that they could not convict a defendant on the testimony of one eye-witness alone. The State points out that appellant failed to object to the trial court's dismissal of the two venirepersons of which he complains. The record supports the State's assertion; appellant has failed to preserve error. *Kemp v. State,* 846 S.W.2d 289, 302 (Tex.Crim.App.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993); Tex.R.App.P. 52(a). Appellant's eighth point of error is overruled.

 In point of error nine, appellant asserts that the district court erred in denying his "motion to limit [the] State's challenges for cause against jurors with conscientious scruples against the death penalty." His argument consists of one sentence: "Since the motion adequately followed current constitutional law, the trial court reversibly erred in denying that motion ..." (citation omitted). Appellant offers no authority for the proposition that the trial court's denial of a motion is alone reversible error. Appellant's point is not adequately briefed. *State v. Gonzalez,* 855 S.W.2d at 697; *Goodwin,* 799 S.W.2d at 723; *Coble,* 871 S.W.2d at 201–02, (Tex.Crim.App.1993); Tex.R.App.P. 74(f). Appellant's ninth point of error is overruled.

## IV. Guilt Phase

### A. Impeachment

 In point of error ten, appellant asserts that the trial court committed reversible error in overruling his objection to the State's improper impeachment of Eduardo Morales by reading his prior out-of-court statement to him. Appellant concedes that the State may impeach its own witnesses under Rule 607, Texas Rules of Criminal Evidence, except when the State's primary reason for calling the witness is to impeach

him or introduce otherwise inadmissible evidence. However, appellant asserts that the State improperly used Rule 607, calling the witness "solely" and "primarily" to impeach him and thus introduce otherwise inadmissible evidence. The State counters that appellant failed to properly preserve error with a specific objection.

Appellant urges us to reverse his conviction on the ground that a party may not impeach its own witness where the party calls the witness solely or primarily to introduce otherwise inadmissible evidence via a "sham" impeachment. But appellant's objection at trial was not founded on this theory of law. Appellant's trial objection was to the form of the questions.[5] It did not allege that the impeachment of Morales was merely a charade by which to introduce inadmissible evidence. Thus, appellant's objection did not raise the argument on which he now relies. We cannot hold that the trial court erred in its determination of an issue that was not even before it. Tex.R.Crim.Evid. 103(a)(1); Tex.R.App.P. 52(a). *E.g., Hollins v. State,* 805 S.W.2d 475, 476 (Tex.Crim.App.1991); *Johnson v. State,* 803 S.W.2d 272, 292 (Tex. Crim.App.1990) *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). Point of Error ten is overruled.

In point of error thirteen, appellant posits that the trial court erred in sustaining the State's objection to his impeachment evidence against Eduardo Morales' out-of-court statements. The record establishes that appellant attempted to impeach Morales' incriminatory out-of-court statements by means of a letter which Morales had written to his wife in which he allegedly stated that he did not personally know who had committed the murder but that he had heard from someone who it was.[6] Appellant offered no theory under which the hearsay might be admissible. The letter was never introduced into evidence nor was any offer of proof made through which we might now review the excluded evidence. Appellant has failed to preserve his question for review. Tex. R.App.P. 52(b); Tex.R.Crim.Evid. 103(a)(2). His thirteenth point of error is overruled.

## B. Translation Error

In point of error thirty-two, appellant complains that the trial court violated Art. 38.30 in not allowing the court translator to finish the interpretation of a witness' testimony. Appellant misrepresents the facts and the legal issues giving rise to this question. Correcting appellant's misrepresentations reveals that the facts present us with a novel issue; what is required to preserve error when an inaccurate translation is offered into evidence?

The State called Javier Barrera–Pena who testified with the help of a translator. The translator interpreted the questions from English to Spanish and *vice versa* with the witness' answers. During the final portion of the State's direct examination of the witness, defense counsel, Mr. Rodriguez, stood up, stating, "Excuse me, your Honor, that translation wasn't complete." The trial court responded that counsel could clarify any inaccuracy in the translation on cross examination of the witness. Appellant's counsel, this time Mr. Banks, renewed the objection on

---

5. Defense counsel's objection was:
 I think this is improper impeachment on the part of the lady prosecutor. She is basically, reading, supposedly, a statement that is signed by this individual, and we object to her leading to the statement that is signed by this individual. If she wants to impeach him, as to prior inconsistent statements on this, then she needs to ask him the questions rather than go right through it and read it.

6. We note that the State first objected to the reading of a document not yet introduced into evidence and was sustained. Then the State objected to the letter on hearsay grounds. The trial judge correctly sustained the objection and explained to appellant's counsel that it must first establish an exception to hearsay before the court could overrule the State's objection. The briefs suggest that the letter contained both admissible and inadmissible hearsay. However, since appellant failed to separate the admissible from the inadmissible, even if introduced into evidence, we could not have held that the trial court erred in excluding the statement. *See Jones v. State,* 843 S.W.2d 487, 492–493 (Tex. Crim.App.1992).

grounds that the translation was "inaccurate." Again, the trial court suggested that defense counsel would have the opportunity to impeach the translation during its cross-examination of the witness. Appellant's counsel apparently abandoned their "objection" stating, "that's fine, your Honor."

■ Appellant asserts on appeal that the judge's overruling his "objection" constituted a violation of Art. 38.30 which provides for the appointment of translators. Appellant's reliance is ill-placed; Art. 38.30 provides for the appointment of translators and guards their competence, but does not address the problem of individual, isolated, and inaccurate translations. Questions regarding the appointment and performance of translators are legal questions regarding rights guaranteed by the United States and Texas constitutions—rights ensuring that an individual defendant has a fair trial. *Baltierra v. State,* 586 S.W.2d 553 (Tex.Crim.App.1979). As issues of law, these questions are reviewable by an appellate court. However, appellant's objection is not to the general competence of the translator; it is to the accuracy of an individual translation which raises a different type of issue and a question surprisingly novel to our jurisdiction.

■ Appellant objected specifically to the inaccuracy of a translation, interpreting a witness' testimony into English. Upon study and reflection, we conclude that we cannot even review the question, because there is no legal issue presented; it is a factual question which ultimately only the jury can answer, and which is not reviewable by this court. *See State v. Burris,* 131 Ariz. 563, 643 P.2d 8, 14 (App.1982) (The accuracy of the sworn interpreter's interpretation may be im-

peached and is ultimately to be determined by the jury), citing *Skaggs v. State,* 108 Ind. 53, 8 N.E. 695, 697 (1886); *See also United States v. Manos,* 848 F.2d 1427, 1432–3 (7th Cir.1988) (questioning of translation could be probed thoroughly upon cross examination). *See also* J.E. Macy, Annotation, *Use of Interpreter in Court Proceedings,* 172 A.L.R. 923 (1948) (The interpreter is a witness in the sense that the accuracy of his translation is a question of fact for the jury). We, as an appellate court, can no more determine whether a translation is accurate or which of two translations is more accurate, than we can determine which of two witnesses is telling the truth, or which of the two is more truthful; these are questions for the factfinder.[7] "This Court has no jurisdiction to disturb the [jury's finding of fact] in the absence of some question of law being presented." *Morris v. State,* 158 S.W.2d 812, 813 (Tex. Crim.App.1942). Similarly, just as appellant may not preserve error by objecting at trial that a witness is lying, he may not preserve error objecting that a translation is inaccurate; there is simply no reviewable question to preserve. Just as he must impeach the lying witness at trial to cure the lie, a defendant must impeach the inaccurate or incomplete translation to cure it. As a question of fact, appellant must settle the question of a translation's accuracy at trial by impeaching the translation; cross-examination of the witness presents the most convenient vehicle, but impeachment may be accomplished by many other means.[8]

As appellant does not challenge the general skill of the interpreter, but only the admission into evidence of a particular translation, he presents no reviewable questions. His thirty-second point of error is overruled.[9]

7. We emphasize that we are not presented with a case in which a translator consistently mistranslated statements by a witness, thus, raising a question of the translator's qualifications under Art. 38.30.

8. Independent evidence may be introduced to show that the interpreter's version was incorrect, or the interpreter may be placed in the witness stand and cross-examined as to what the witness

had said. J.E. Macy, Annotation, *Use of Interpreter in Court Proceedings,* 172 A.L.R. 923, 951.

9. We add that in the present case, no specific objection was offered stating the problem with the interpretation admitted into evidence, nor was any "correct" interpretation entered into the record by offer of proof or during cross examination of the witness. Therefore, even if we could review the question, we would have to find that appellant failed to preserve error. Indeed, it

## C. Jury Instructions

■ Appellant complains in points of error fourteen and fifteen of the trial court's denial of his requested instructions on the presumption of innocence and reasonable doubt, respectively. The State counters that appellant withdrew his request for these instructions and made no objection to the jury charge and, thus, preserved nothing for review.

The record reveals that appellant's trial counsel initially made no objection to the jury instructions but requested an opportunity to file an additional instruction on reasonable doubt and presumption of innocence which he had not yet prepared. When asked what the nature of his request would be, appellant's counsel responded that it would emphasize that the State must prove every element of the offense beyond a reasonable doubt because of the presumption of innocence. The trial judge responded that he would entertain the written request but that he thought the boilerplate charge covering these topics was adequate. Subsequently, appellant's counsel withdrew his request for the charge. Appellant thus failed to properly preserve error for appellate review. *See* Tex.R.App.P. 52(a). Appellant does not claim that the charging error was so egregious as to deny him a fair trial. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim. App.1984) (opinion on rehearing). Points of error fourteen and fifteen are overruled.

## D. Final Argument

■ Appellant argues points of error eleven and twelve together. He argues that the State engaged in flagrant misconduct by reading Eduardo Morales' statement to the jury and then offering parts of the statement as substantive evidence in closing argument. Appellant argues that the State's misconduct denied him due process and due course of law under both the United States and Texas Constitutions. Appellant's argument is wholly conclusory, offering no explanation of, much less argument supporting, his allegation of prosecutorial misconduct. He simply asserts that there was misconduct.

We decline to make appellant's arguments for him or to guess at his meanings. Thus, because his argument is inadequately briefed, appellant's eleventh and twelfth points of error are overruled. *State v. Gonzalez,* 855 S.W.2d at 697; *Goodwin,* 799 S.W.2d at 723; *Coble,* 871 S.W.2d at 201–02, (Tex.Crim.App.1993); Tex.R.App.P. 74(f).

■ Point of error sixteen asserts that the trial court erred in overruling six of appellant's objections to the State's final argument at the guilt stage. This point is inadequately briefed, raising six different objections in fewer than three full pages of argument. Appellant lists each alleged error and asserts that it violates a general proposition of law, but fails to present argument.[10] This inadequate briefing leaves us guessing at appellant's argument. We insist that appellant meet his burden of providing clear and specific arguments. *Gonzalez,* 855 S.W.2d at 697; *Goodwin,* 799 S.W.2d at 723; *Coble,* 871 S.W.2d at 201–02, (Tex.Crim.App. November 3, 1993); Tex.R.App.P. 74(f). Appellant's sixteenth point of error is overruled.

■ Appellant argues in point of error seventeen that the Court erred in sustaining the State's objection to part of his closing argument. During the guilt phase of the trial, appellant argued the weakness of the evidence and stated "They want you to kill

seems that after their initial objections appellant's trial counsel completely abandoned the issue. Even in his brief, appellant fails to assert the specific problem with the interpretation in question, and does not offer any explanation of harm.

10. In the interest of justice we reviewed appellant's arguments, and have found them unsupported by the record. The State correctly points out that appellant simply ignores certain evidence which appears in the record or ignores the context in which the statement is made. Each of the State's arguments, of which appellant complains, falls within the four well defined categories of permissible argument. *See E.g., Cantu v. State,* 842 S.W.2d 667, 690 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993).

him. They want you to kill him—I'll tell you that right now. That if you convict, they are going to want you to kill Hector Torres Garcia." The State's objection that this punishment issue was beyond the scope of the guilt phase of trial was sustained.

Appellant proposes that because the State is allowed to argue the effects of acquittal, he must be permitted to argue the effects of conviction. Appellant's argument is flawed; conviction or acquittal is *the* issue at the guilt phase of trial. The effect of conviction is *the* issue at punishment. Punishment may not be appropriately discussed by either side until and unless the defendant is convicted, i.e., at the punishment phase. *See McClure v. State*, 544 S.W.2d 390, 393 (Tex.Crim.App. 1977) (Prosecutor's closing argument at guilt stage in which he advised jurors of effect of their verdict by referring to difference in punishment between murder and voluntary manslaughter was error; in effect prosecutor was urging jury to decide conviction on punishment rather than on the evidence and the law). The State's objection was properly sustained. Appellant's seventeenth point of error is overruled.

■ In point of error eighteen, appellant complains that the State improperly commented during closing argument on his failure to testify. Appellant argues under *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and Article 38.08. The State counters that no objection was made at trial and asserts that the statement complained of cannot be reasonably interpreted as a comment on appellant's failure to testify. The record supports the State's arguments; no objection was made. Thus error, if any, was not preserved. An objection must be timely and specific. *See* Tex. R.App.P. 52(a). *See also Hollins v. State*, 805 S.W.2d 475, 476 (Tex.Crim.App.1991).[11] We overrule appellant's eighteenth point of error.

11. Moreover, we agree with the State that its indirect comment in its context could not "naturally and necessarily be interpreted by a jury to comment on [appellant's] failure to testify." *E.g., Owen v. State*, 656 S.W.2d 458, 459 (Tex.

■ In point of error twenty-nine, appellant avers that the prosecutor reversibly erred in her closing argument at the guilt phase of the trial by presenting, as substantive evidence, facts revealed in the statements of Eduardo Morales which were introduced for impeachment purposes only.

Eduardo Morales took the stand as a State's witness under a grant of immunity and surprised the State by denying the veracity of his prior incriminatory statements. The State introduced Morales' prior statements ostensibly to impeach him. However, no limiting instruction was requested nor was one given; the defense testified that it made the tactical decision not to request the instruction. On appeal, appellant complains that at closing the State argued facts from the statements as substantive evidence; he points to twenty-seven objectionable references made by the prosecution. In reviewing the record, we discover that not one objection was made at trial to preserve the issues which appellant now argues. Without a timely, specific objection to the jury argument, no error is preserved for appellate review. *E.g., Borgen v. State*, 672 S.W.2d 456, 460 (Tex.Crim.App.1984). Appellant's twenty-ninth point of error is overruled.

In point of error thirty appellant complains again that the "prosecution" erred in arguing improperly during its closing arguments that the appellant was a danger to her. Again, no objection was made at trial to this statement. Thus, the point was not preserved for review. *E.g., Borgen* 672 S.W.2d at 460. Appellant's thirtieth point of error is overruled.

## V. Punishment

■ In point of error one, two, and three, appellant argues that the trial court reversibly erred in failing to instruct the jury during the punishment phase of the trial that evidence used to impeach a witness, Eduardo

Crim.App.1983), quoting *Griffin. See more recently, Bower v. State*, 769 S.W.2d 887, 906 (Tex. Crim.App.1989), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989).

Morales, was to be considered only for impeachment and not as substantive evidence in deciding the punishment issues. The State counters that appellant has waived any error a) by failing to object and request a limiting instruction at the introduction of the evidence at the guilty phase of his trial, b) by failing to object and request a limiting instruction in the charge at the guilt phase of trial, and c) by failing to object and request a limiting instruction at the re-introduction of the evidence at the punishment stage of trial.[12]

According to the record, the State called Eduardo Morales to the stand. He was granted immunity in exchange for the testimony he was to give. Morales surprised the State with his testimony that he had not left home on the night of the offense. The State impeached Morales by introducing his previous statement which related that Morales had provided, albeit unwittingly, appellant a ride to and from the murder, and appellant had told him that he killed a boy and then threatened Morales with death if he revealed what he knew to anyone. On appeal, appellant objects specifically to Morales' prior statement that appellant threatened to kill him if he ever told anyone what happened.

When the statements were introduced during the guilt phase of trial, appellant made an objection to the form of the question but did not object to or request a limiting instruction regarding Morales' statements.[13] Appellant did not object or request a limiting instruc-

tion to the charge at the guilty phase of his trial. At the beginning of punishment the State made a blanket re-offer of all the evidence without objection from Appellant. Appellant objected to the charge and requested a limiting instruction at the close of the punishment stage of trial. Thus, appellant's only objection was to the charge at the punishment stage; he requested an instruction limiting Morales prior statements to be limited to impeachment purposes.[14]

■■■■ Appellant argues on appeal that Rule 105 of the Texas Rules of Criminal Evidence required the trial court to give a limiting instruction when requested at punishment because the evidence complained of was admitted for the limited purpose of impeachment.[15] However, appellant ignores the fact that a party opposing evidence has the burden of objecting and requesting the limiting instruction at the introduction of the evidence. *E.g., Abdnor v. State*, 808 S.W.2d 476, 478 (Tex.Crim.App.1991); *Plante v. State*, 692 S.W.2d 487, 493 (Tex.Crim.App. 1985); Tex.R.Crim.Evid. 105; Tex.R.App.P. 52(a). Appellant further ignores that once evidence is received without a proper limiting instruction, it becomes part of the general evidence in the case and may be used as proof to the full extent of its rational persuasive power. *See* 1 Edward W. Cleary et. al., *McCormick on Evidence* 4th Ed. § 54 (1992).[16] Once admitted, the fact that evidence might have been inadmissible for certain purposes if the proper objection had

---

**12.** Alternatively, the State argues that the evidence was admissible at punishment as substantive evidence of future dangerousness and not merely for impeachment.

**13.** *See* note five, *supra.*

**14.** The State in its argument urges that the evidence, while admitted for a limited purpose at culpability, was not limited at punishment but, as evidence of an extraneous misconduct the threat to kill Morales could be properly considered in deliberation of the two special issues. For the reasons stated in our holding, this issue is not reached.

**15.** Rule 105 states:

(a) When evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but in the absence of such request the court's action in admitting such evidence without a limitation shall not be a ground for complaint on appeal. Tex.R.Crim.Evid.

**16.** *Cf. See also United State v. Alvarez*, 584 F.2d 694, 697 (5th Cir.1978) (absent plain error, evidence not subjected to proper objection is ordinarily admissible at trial for any relevant purpose).

been made does not limit its use. *Id.*[17]

The record indicates that the State made a blanket re-offer of all evidence from the guilt phase of trial at the outset of the punishment phase without any objection or request for a limiting instruction from appellant. Without at least an objection to the re-introduction of the evidence, appellant forfeited any error and the evidence was admitted into the punishment phase of trial as probative of any question to which it was relevant.[18] Thus, the trial court did not err in failing to charge the jury with a limiting instruction regarding Edward Morales' statements. Indeed, since the evidence was admitted as substantive, not merely impeachment evidence, the requested instruction was not appropriate.[19] Appellant's first three points of error are overruled.

In point of error four, appellant asserts that the trial court erred in its failure to sustain his objections to several of the State's closing arguments at punishment. Appellant complains that the State made several improper references to the out-of-court statements of Eduardo Morales, whose testimony was admitted for impeachment purposes only. We overrule appellant on the grounds discussed under points one through three, *supra*, and because the point is inadequately briefed. Appellant offers absolutely no authority, statutory or case law, in support of his argument. *Gonzalez*, 855 S.W.2d at 697;

*Goodwin*, 799 S.W.2d at 723; *Coble*, 871 S.W.2d at 801–02, (Tex.Crim.App.1993); Tex. R.App.P. 74(f). Appellant's fourth point of error is overruled.

 Point of error thirty-one voices appellant's complaint to eighteen remarks made by the prosecutor in her closing argument at punishment.[20] Our review of the record shows that at trial the defense only objected to two of the remarks of which appellant now complains. Thus, no error was preserved as to the sixteen arguments to which appellant did not object. *E.g., Borgen* 672 S.W.2d at 460. Trial counsel did object to the State's assertion that appellant is a "selfish" person who "will do what is necessary for him to get his way," on grounds that the argument was outside of the evidence presented. It was overruled. We do not find error in the court's ruling. The evidence supports the State's argument that appellant is a dangerous man, without regard for human life, capable of killing another human being if that is what is necessary for him to succeed in his crimes. Appellant's thirty-first point of error is overruled.

## VI. Ineffective Assistance of Counsel

Points nineteen through twenty-two voice appellant's contentions that his capital murder conviction must be reversed because he was denied effective assistance of counsel as

---

**17.** Cf. *Lankston v. State*, 827 S.W.2d 907, 908 (Tex.Crim.App.1992) (explaining that evidence is generally admissible until a specific objection is made); *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990) (opinion on rehearing) (rules of evidence favor admission of all relevant evidence and it is incumbent upon opposing party to raise objection).

**18.** We hasten to add that we do not reach the question of whether the failure to request a limiting instruction at the culpability phase of trial waived any limiting instruction at punishment. Our bifurcated system makes it conceivable that a defendant may legitimately choose to object and request a limiting instruction to evidence at only one phase of trial. Our holding today merely states that a defendant must at least object at the introduction of the evidence at punishment to limit its purpose at punishment.

**19.** We note that Morales' statements were not, even at the culpability phase, merely impeachment evidence; once admitted without a limiting instruction, it was general evidence probative of any issue to which it bore relevance. We further point out that the State's alternative argument is also correct. Even if the evidence specifically complained of—appellant's threat to kill the witness—had been admitted for limited purposes at culpability, it was admissible at punishment as substantive evidence of future dangerousness.

**20.** Appellant again, as in point thirty, asserts that the *prosecution* committed reversible error instead of asserting that the trial court erred; again we assume this is an attempt to cover up the fact that no objections were made and thus the trial court was not given an opportunity to err.

required by the Sixth Amendment to the United States Constitution.

 The standard for testing claims of ineffective assistance of counsel was announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[21] In *Strickland*, the Supreme Court admonished that a claimant must prove that counsel's representation so undermined the "proper functioning of the adversarial process that the trial cannot be relied on having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. Appellant must prove: 1) that his counsel's representation was deficient; and 2) that the deficient performance was so serious that it prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064. This means, appellant must prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that but for counsel's deficiency the result of the trial would have been different. *McFarland v. State*, 845 S.W.2d 824, 842 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

 The review of counsel's representation is highly deferential and indulges a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The burden is on appellant to overcome the presumption. *Id.* Appellant "must identify the acts or omissions of counsel that are alleged" to constitute ineffective assistance and affirmatively prove that they fall below the professional norm for reasonableness. *Id.* at 690, 104 S.Ct. at 2065–66. After proving error, appellant must *affirmatively prove prejudice*. *Id.* at 693, 104 S.Ct. at 2067–68. Appellant must prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by only a portion of trial, denied him a fair trial. *Id.* at 695, 104 S.Ct. at 2068–69;

*McFarland*, 845 S.W.2d at 843. It is not enough for appellant to show that the errors had some conceivable effect on the outcome of the proceedings. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067–68. He must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt and/or the sentence of death. *Id.* at 695, 104 S.Ct. at 2068–69. In reviewing this determination, the totality of the evidence before the jury is considered. *Id.* Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* at 700, 104 S.Ct. at 2071.

After reviewing the record, we overrule appellant's arguments on grounds that he fails to meet the burden required to prove ineffective assistance of counsel under *Strickland*.

 Appellant's ineffectiveness claims rest on the introduction of Eduardo Morales' prior statements to impeach his surprising denial of any involvement on his part in the murders. *See* points of error one, two, and three, *supra*. We begin by overruling points of error twenty and twenty-two which challenge trial counsel's failure to object to the State's references in its closing arguments at both the guilt and punishment phases of trial to Morales' statement. For reasons already explained under points of error one through three we cannot agree that these omissions amounted to error, much less ineffective assistance of counsel.

 Point of error nineteen asserts that counsel was ineffective because he failed to object to the introduction of Morales' statement at culpability. Besides being factually unfounded (counsel did object, albeit to the form of the question), the point is inadequately briefed. Appellant offers no explanation of how counsel might have kept the statement out; the objection that should

---

**21.** We have adopted the *Strickland* test for challenges based on Texas law, applying it in capital murder cases to both the guilt/innocence and punishment stages of trial. *Hernandez v. State,*

726 S.W.2d 53, 57 (Tex.Crim.App.1986), and *Craig v. State*, 825 S.W.2d 128, 129 (Tex.Crim. App.1992).

have been made is not obvious to us. *Gonzalez,* 855 S.W.2d at 697; *Goodwin,* 799 S.W.2d at 723; *Coble,* 871 S.W.2d at 201–02, (Tex.Crim.App.1993); Tex.R.App.P. 74(f). We remind appellant that it is his burden to overcome the presumption that counsel's representation was reasonable. Appellant's nineteenth point is overruled.

■ The nucleus of appellant's ineffectiveness challenge is raised in point twenty-one, complaining of trial counsel's failure to request a limiting instruction regarding Eduardo Morales' statement. In retrospect, it would seem that trial counsel's decision was a mistake. However, to test the effectiveness of counsel, the question asked is whether counsel's decision was within the wide range of reasonable and responsible representation at the time the decision was made. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Appellant's counsel was faced with an extremely difficult case, namely, the eyewitness testimony of a young lady who would testify that before being shot and left for dead, she witnessed appellant shoot, in cold-blood, her teenage brother in the head. The record of the trial reveals and trial counsel testified at the hearing on a motion for new trial that the decision against a limiting instruction was a matter of trial strategy—that the defense did not want to draw more attention to the incriminating evidence in the statements. Trial counsel's decision not to request a limiting instruction regarding Morales' statement was in view of the facts not unreasonable. It was within the wide range of reasonable discretion necessary for the practice of law.

Appellant's nineteenth through twenty-second points of error are overruled.

## VII. On Appeal

■ In point of error twenty-six appellant insists that his conviction must be reversed because "although duly requested for inclusion in the record, the court reporters have not prepared the statement of facts concerning various hearings."

Appellant's argument consists of an excerpt from Rule 50 of the Texas Rules of Appellate Procedure and citations to *Emery v. State,* 800 S.W.2d 530 (Tex.Crim.App. 1990), and *Payne v. State,* 802 S.W.2d 686 (Tex.Crim.App.1990). These cases stand for the proposition that death penalty convictions must be reversed if an important portion of the designated statement of facts is lost through no fault of the appellant. In failing to allege and establish that portions of the record have indeed been lost or destroyed, appellant presents no issue for our review. Indeed, our record reveals that appellant misrepresents the facts; some of the statements allegedly missing are in the record, some of the requested records are for hearings which do not exist, and there is no transcript of appellant's objection to a hearing before a visiting judge, because his objection was granted and the hearing reassigned to another judge.[22] Because appellant presents no issue, argument, or evidence of harm and because his contentions are factually and legally meritless, his twenty-sixth point of error is overruled.

## VIII. Points in Supplemental Briefs

Point of error thirty-three raises appellant's contention that the trial court erred in denying his motion at punishment to provide the jury a limiting instruction on the use of Eduardo Morales' statements for impeachment purposes only. This issue is identical to that raised in points of error one, two, and three, and thus has already been addressed, *supra.* Appellant's thirty-third point of error is overruled.

Points of error thirty-four, thirty-five, and thirty-six are the most egregious examples of

---

**22.** Appellant's complaint is based largely on his own misstatement of the facts; a misstatement which we hope is not willful. The record does contain transcripts of hearings on January 17, July 6 and 9, 1990. The docket sheet does not reflect any hearing on April 4, 1990, but does reflect one on April 9, 1990; appellant's counsel has perhaps misread the date. There is no state-ment of facts of the June 29, 1990 hearing; however, the docket sheet reflects that the defense objected to the assignment of a visiting judge. That objection was granted, with a notation to the presiding judge to assign another judge. Moreover, appellant did not in his designation specifically request a transcript of this hearing.

multifarious and inadequately briefed points presented before this court in recent memory. In each of these points appellant asserts that the errors alleged in each of the original thirty-two points of error was in violation of Fourteenth Amendment due process, and due course of law under Art. 1 § 19 of the Texas Constitution, the Eighth Amendment of the U.S. Constitution and Art. 1 § 13 of the Texas Constitution, and the Sixth and Fourteenth Amendments of the U.S. Constitution and Art. 1 § 10 of the Texas Constitution, respectively. No argument or authority is presented. Points thirty-four, thirty-five and thirty-six are summarily overruled.

■ In points of error thirty-seven, thirty-eight, and thirty-nine, appellant reasserts that the trial court erred in failing to instruct the jury on the limited purpose of Eduardo Morales' prior statements.[23] Appellant presents no argument in support of his contentions; thus, they are not adequately briefed and in violation of Rule 74(f) of the Texas Rules of Appellate Procedure. *Gonzalez*, 855 S.W.2d at 697; *Goodwin*, 799 S.W.2d at 723; *Coble*, 871 S.W.2d at 201–02, (Tex.Crim.App. 1993). Moreover, appellant's points are based on the mistaken presumption that the evidence was admitted for impeachment only; without a limiting instruction the evidence was not limited to impeachment. *See* points of error one, two, and three, *supra*. Points of error thirty-seven, thirty-eight, and thirty-nine are overruled.

Points of error forty, forty-one, forty-two, forty-three, and forty-four, present various claims of error based on the trial court's denial of appellant's motion for new trial. They are "argued" together; but, appellant presents absolutely no argument or authority in support of his contentions.

■ Point of error forty-three is illustrative; it asserts that the trial court reversibly

erred in overruling "appellant's original motion for new trial's paragraphs XII, which read":

> Thus, for the state [sic] of Texas to maintain the judgment of conviction and sentence herein is a violation of the defendant's State and Federal Constitution rights to due process, to due course of law, to a fair and impartial trial by jury, to equal protection, and to be free from cruel and unusual punishment.

There is no argument specific to point forty-three. The Rules of Appellate Procedure and our case law both demand that an appellant before this court present his own case, stating his specific legal argument, specifying and citing from the record the factual bases for his argument, and preservation of error in the record, and argue case law, explaining its pertinence to his argument. We will not brief appellant's case for him. Tex.R.App. Proc. 74. This point is inadequately briefed and in violation of Rule 74. *Gonzalez*, 855 S.W.2d at 697; *Goodwin*, 799 S.W.2d at 723; *Coble*, 871 S.W.2d at 201–02, (Tex.Crim.App. 1993).

■ Point of error forty avers that the trial court erred in denying appellant's motion for new trial on grounds of juror misconduct. Appellant asserts that the jurors considered appellant's failure to testify as evidence of guilt in spite of the court's instruction to the contrary. The record of the hearing on appellant's motion for new trial does not support his contention. The juror's testimony reveals that someone brought up appellant's failure to testify, and was quickly admonished by several other jurors that the failure to testify was not to be considered evidence of guilt. According to the jurors the issue was not brought up again. This does not present evidence that the jurors considered appellant's failure to testify as

---

**23.** In point of error thirty-seven appellant asserts that the failure to give the requested instruction was in violation of the U.S. Constitution's Fourteenth Amendment guarantee of due process. Point thirty-eight asserts that the failure to instruct on impeachment violated the Sixth and Fourteenth Amendments' guarantee to a fair trial. Point of error thirty-nine asserts that the

sentence of death, because of the trial judge's failure to instruct the jury as requested, is a cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment to the U.S. Constitution. Appellant also adds that all these arguments are also made under the corresponding provisions of the Texas Constitution.

evidence of his guilt; it is evidence that they did not do so. *Compare Reyna v. State*, 846 S.W.2d 498, 501–503 (Tex.App.—Corpus Christi 1993) (cited by appellant in supplement to his supplement) (evidence that jurors had discussed appellant's failure to testify as evidence of guilt was uncontroverted).

■ Point of error forty-one asserts that the trial court erred in denying a new trial on grounds that the trial judge had dismissed a panelist already chosen to serve on the jury when he discovered that she had taken employment in the office of co-defendant's attorney. Appellant's argument and authorities consist of the following paragraph:

> It is well settled that the trial court commits reversible error when sua sponte it strikes a prospective juror without challenge for cause from either side. The error here is more egregious, since the trial court sua sponte struck [T.L.], a serving juror. New trial should result.

(Authorities are *not* omitted). When a party raises a point of error without citation of authority or argument, nothing is presented for appellate review. *Gonzalez*, 855 S.W.2d at 697.[24]

In point forty-two appellant complains that the trial court erred in denying his motion for new trial on grounds that the court denied his trial motion to determine what type *Penry* instruction it was going to give before the commencement of voir dire. Appellant asserts that he was "terribly harmed" since his counsel was unable to adequately voir dire potential jurors. We are unaware of any common law, statutory, or constitutional requirement that trial judges have ready their jury instructions before the commencement of voir dire nor does appellant present any such authority. When a party raises a point of error without citation of authority or

argument, nothing is presented for appellate review. *Gonzalez*, 855 S.W.2d at 697.

In point of error forty-four appellant reasserts that the trial court erred in denying his motion for new trial on grounds that counsel was ineffective. We have already disposed of this issue in points of error points of error nineteen through twenty-two, *supra*.

Points of error forty, forty-one, forty-two, forty-three, and forty-four, are overruled.

Under his final point of error, forty-five, appellant pleads that his judgment be "reversed for the cumulative effect of the basis of and argument supporting each and every one of the foregoing points of errors demands nothing less." But appellant's only argument, offered in seven lines, is that *Weathersby v. State*, 627 S.W.2d 729 (Tex.Cr. App.1982), demands reversal. Besides being inadequately briefed, appellant again presents an issue which we have already overruled. *Weathersby* held that counsel's failure to object to inadmissible evidence or improper jury argument, including questions about criminal character of the defendant's friends and detectives' opinions that the defendant was guilty, amounted to *ineffective assistance of counsel*. We have already addressed appellant's objurgations of ineffective assistance of counsel in points of error nineteen through twenty-two, *supra*. Appellant's forty-fifth point of error is overruled.

Appellant's conviction of capital murder and sentence of death are affirmed.

OVERSTREET, J., concurs in the result.

BAIRD, J., filed separate opinion concurring in part and dissenting in part.

CLINTON, J., dissents.

BAIRD, Judge, concurring in part and dissenting in part.

For the following reasons I both concur and dissent to the disposition of this case.

---

**24.** In the interest of justice, we reviewed the record. Interestingly, we found again a misrepresentation of the facts. According to the record, after jury selection was completed but before the swearing in of the jury, the judge indicated that he had just become aware of a problem. He explained that one of the co-defendant's attorneys had informed him that the eighth juror had just taken employment in his office and that the co-defendant had just been indicted. The trial judge then *asked* both sides what, if anything, needed to be done. *Appellant*, through counsel, moved that the juror be replaced with one of the alternates. The State stated that they had no problem with that course of action since there were two alternates.

This case represents an opportunity to clarify the ramifications of a failure to comply with the appellate rules for briefing. *See*, Tex.R.App.P. 74 *et seq.* Unfortunately, the presentation of an inadequate appellate brief is not uncommon. *See, Woods v. State,* 569 S.W.2d 901, 905 (Tex.Cr.App.1978) ("These 'Points of Consideration' are without citation of authorities or argument, are not in compliance with Article 40.09, § 9 V.A.C.C.P., and therefore present nothing for review."); *Sterling v. State,* 800 S.W.2d 513, 521 (Tex.Cr.App.1990) ("... [B]y combining more than one contention in a single point of error, an appellant risks rejection on the ground that nothing will be presented for review."); *and, Vuong v. State,* 830 S.W.2d 929, 940 (Tex.Cr.App.1992) ("... Appellant cites this Court to no specific constitutional provision, statutory authority, or case law to support this claim."). Generally, we treat inadequate briefs in two ways: 1) by refusing to address the alleged point of error; and, 2) by addressing the alleged point of error in the interests of justice and judicial economy. *See, McWherter v. State,* 607 S.W.2d 531, 536 (Tex.Cr.App.1980) ("The brief does not comply with Article 40.09, § 9, V.A.C.C.P., and presents nothing for review."); *Pierce v. State,* 777 S.W.2d 399, 418 (Tex.Cr.App.1989) ("Such a failure to cite to relevant portions of the record and set out the legal theory on which appellant rests his contention means that nothing is presented for review."); *Sterling,* 800 S.W.2d at 521 ("While such point of error runs the risk of presenting nothing for review, we will, in the interests of judicial economy and justice, address appellant's claims."); *and, Coble v. State,* 871 S.W.2d 192, 202 (Tex.Cr.App.1993) ("While we agree that this point of error is inadequately briefed, appellant's claim also fails on the merits."). However, we also have the authority to order a brief redrawn and we have issued orders to that effect. *See, Pumphrey v. State,* 689 S.W.2d 466, 467 (Tex.Cr.App. 1985); *and, Hughes v. State,* Tex.Cr.App. No. 70, 504, Order delivered October 13, 1992.

I believe the "interests of judicial economy and justice," would be better served in the instant case by ordering appellant to redraw his brief. The majority finds appellant's brief is inadequate in twenty-five points of error and that fifteen of the remaining points of error were not preserved for appellate review. Consequently, of the forty-five points of error raised in this appeal we address the merits of only five. Our authority to order a brief redrawn is found within Tex.R.App.P. 74. Rule 74(h) provides "[i]f any brief is unnecessarily lengthy or *not prepared in conformity with these rules,* the court may require same to be redrawn." [1] Rule 74(*o*) provides "... [I]f the Court shall strike or refuse to consider any part of a brief, the court shall on reasonable terms allow the same to be amended or supplemented." Finally, Rule 74(p) provides that although substantial compliance with the appellate rules is sufficient to raise error, "... *[F]or a flagrant violation* of this rule the court may require a case to be rebriefed." The majority has found a significant portion of appellant's brief to be "the most egregious examples of multifarious and inadequately briefed points presented before this court in recent memory." Majority op., 887 S.W.2d at 881–882. Appellant, through his attorney, has committed "a flagrant violation" of Rule 74.

In *Passmore v. Estelle,* 607 F.2d 662 (5th Cir.1979), the Fifth Circuit considered this issue. On direct appeal, Passmore's appellate counsel filed a brief consisting of one sentence. We held the brief presented nothing for our review and affirmed. The Fifth Circuit held that the Due Process Clause of the United States' Constitution is offended when criminal proceedings become fundamentally unfair. *Passmore,* 607 F.2d at 663. The Court stated:

It is abundantly clear that the Texas Court of Criminal Appeals had actual knowledge that petitioner was receiving incompetent representation and took no remedial action. The per curiam opinion noted that "[o]bviously, this [one sentence brief] presents nothing for review." ...

In the instant case, the Texas Court of Criminal Appeals could have ordered peti-

---

1. All emphasis is supplied unless otherwise indicated.

tioner's counsel to rebrief the case before disposition of the appeal, especially since counsel had attempted untimely to submit a "First Amended Brief," which the Court refused to consider. As in [*Cantrell v. Alabama,* 546 F.2d 652 (5th Cir.1977)], the Constitution requires more than was afforded petitioner.

*Id.,* 607 F.2d at 664. The Court remanded the case to federal district court instructing the trial judge "to enter an order granting the petition for writ of habeas corpus unless the courts of Texas shall grant and afford the petitioner a new and out-of-time appeal...." *Id.,* 607 F.2d at 664. This we did. *Passmore v. State,* 617 S.W.2d 682 (Tex.Cr.App.1981).

Although the instant brief is by no means a "one-sentence brief," the similarity between the issues and disposition in *Passmore* and the instant case remains. By summarily disposing of forty of appellant's forty-five points of error we only postpone the inevitable. Experience teaches us that we will be forced to address appellant's rights to effective assistance of appellate counsel and due process, either by order of a federal court or by a post-conviction application for writ of habeas corpus. Tex.Code Crim.Proc.Ann. art. 11.07. Consequently, in the interests of judicial economy and justice, we should order the brief in this case redrawn. If this cannot be accomplished by present appellate counsel, we should remand the case to the trial court for the appointment of new appellate counsel.

With these comments, I dissent to the majority's decision to not order this brief withdrawn and I join the judgment of the Court in points of error five, seventeen, twenty-seven and twenty-eight.