NO. 07-03-0362-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 16, 2004

_____

MICHAEL LEROY CAMERON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 9TH DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 01-09-05992-CR; HONORABLE FRED EDWARDS, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Appellant Michael Leroy Cameron pleaded not guilty, but was convicted of delivery of a controlled substance after a jury trial. Finding the enhancement allegations contained in the indictment to be true, the trial court assessed a sentence of 25 years confinement. With two issues, appellant asserts: (1) the trial court erred in prohibiting his prior attorney

from testifying unless appellant waived the attorney-client privilege; and (2) his trial counsel was ineffective. We affirm.

Ron Pickering and Philip Cash were working as undercover narcotics officers at the Handle Bar nightclub in Conroe on the night of April 26, 2002. Just before midnight, Pickering was approached by Stacy Warden, appellant's co-defendant, who asked if he wanted to smoke some marihuana with her. Pickering declined, but asked if she knew where he could buy some cocaine. Warden "said she could probably get it" for him, then placed a call on Pickering's cell phone. After concluding the phone call, Warden confirmed that "it [the cocaine] would be there within 15 minutes." When Pickering inquired about price, Warden advised him that the drugs would cost $120.

Shortly before 2:00 a.m., a man later identified as appellant entered the nightclub, made eye contact with Warden, then walked out. Warden told Pickering that the drugs had arrived, then Pickering, Cash, and Warden went outside to the parking lot. There, the officers observed Warden standing by appellant next to a pickup truck. Warden took what Pickering "assumed was the cocaine" from appellant, "put it in her fist and folded her arms and walked across the parking lot" to him. She then opened her fist to reveal the cocaine. Pickering took the drugs from Warden and gave her the money, which she placed "in her hand and [then she] walked back with her hands crossed like she did when she approached" him. When Warden reached appellant, she handed him the money. Once the transaction was complete, Warden, Cash, Pickering, and appellant met at the truck,

where Warden introduced appellant as Mike. Appellant asked Pickering "how he liked the blow," the street name for powder cocaine. After Pickering "told him it was great," appellant advised him that "if [he] needed anything more that [he] should contact [Warden]."

At some point during the evening, Pickering obtained the license plate number of the truck by which he saw appellant standing. Later that night, Pickering contacted his dispatcher and "had the plate run" and discovered that the truck was registered to an individual who previously had been "handled" by the Montague County Sheriff's Department. From that information, Pickering developed the owner's date of birth, height, and weight, which he transmitted to the Department of Public Safety. After DPS provided Pickering with a driver's license photo, he determined that the address on the license was the same as the address on the vehicle registration. Moreover, Pickering recognized the person depicted in the driver's license photo as the same individual with whom he had come into contact at the nightclub. Having thus developed appellant as the suspect in a delivery of a controlled substance case, Pickering referred the case to the district attorney's office. The grand jury indicted appellant for that offense in September of 2001.

With his first issue, appellant maintains the trial court erred in refusing to allow his former trial attorney, Guy Jones, to testify absent a complete waiver of the attorney-client privilege. Specifically, appellant contends that the testimony he sought to elicit from Jones was not privileged because it had nothing to do with confidential information between him and Jones. Rather, appellant maintains that Jones would have "provide[d] beneficial

3

defense testimony based on inconsistencies in the State's file."  Thus, the trial court was wrong to conclude that such testimony would violate the attorney-client privilege and open the attorney to unqualified cross-examination by the State.[1]  We disagree.

The basis of appellant's contention under this issue is the following discussion which occurred during trial outside the presence of the jury:

| | |
|---|---|
| Defense: | Your Honor, it came to my attention when I was hired on this case that Mr. Jones when he first looked at the offense report that it was a handwritten report; went back to look at the report a second time and it was a typewritten report.  When he looked at it the first time, it was a different colored truck given in the report as there was in the second report.  That would be the whole purpose of his testimony. |
| Court: | On the basis of his personal memory or his notes? |
| Defense: | On the basis of his, actually his notes. |
| Court: | Do you have your notes with you? |
| Jones: | They're outside the courtroom, Your Honor. |
| Court: | And your client is willing to waive the attorney-client privilege, I assume? |
| Defense: | Yes, Your Honor. |
| Court: | Well, that's an interesting question. |
| Prosecutor: | He's got to waive it as to all aspects. |
| Defense: | Your Honor, may I have a moment? |
| Court: | Exactly.  I think that if he waives the attorney-client privilege you cannot pick and choose as to what you get to say as to what areas you get to reveal.  Once that |

---

[1]We do not decide if the Lawyer-Client Privilege, Tex. R. Evidence 503 was implicated.

4

> attorney-client privilege crack has been opened, it's a gate, and they're allowed to now – because he's going to have to waive it on the record. I'll give you a moment to talk to him.

> Defense:      I understand they'll be allowed to go into any conversations as well.

> Court:      You need to talk to your client about that and if he is going to waive his attorney-client privilege then I want it on the record, especially for the protection of Mr. Jones. What's your decision?

> Defense:      Your Honor, I don't believe that it requires any type of waiver. He's certainly not going to – at this point he's not going to waive his attorney-client privilege.

> Court:      Then I'm not going to let Mr. Jones testify. Mr. Jones cannot get on the stand and testify as to work product in order to impeach testimony and yet not have a waiver of attorney. You can't have it both ways. You either get it on or you go to the extent of even asking him did he represent him or anything else. He has to do it. I'm not going to put him in that position or this Court.

Following this exchange, Jones testified during an offer of proof that when he reviewed the State's file for the first time, it included a handwritten police report designating the truck as white. Jones further averred that the second time he reviewed the file, the handwritten report had been replaced with a typewritten version that described the truck as dark blue. According to Jones, the two reports were otherwise identical.

To preserve error for appellate review: (1) a party must make a timely, specific objection; (2) the objection must be made at the earliest possible opportunity; (3) the complaining party must obtain an adverse ruling from the trial court; and (4) the issue on appeal must correspond to the objection made at trial. *See* Tex. R. App. P. 33.1(a); Dixon

5

v. State, 2 S.W.3d 263, 265 (Tex.Cr.App. 1998). An objection is sufficient to preserve error for appellate review if it communicates to the trial court what the objecting party wants and why the objecting party thinks himself entitled to relief, and does so in a manner clear enough for the court to understand the objection at a time when it is in the best position to do something about it. *See* Lankston v. State, 827 S.W.2d 907, 909 (Tex.Cr.App. 1992). But when it appears from the context that a party failed to fairly and effectively communicate to the trial court the objection, its basis, or the relief sought, the appellant's complaint has not been preserved. *Id.*

Here, appellant initially stated that he was willing to waive the privilege to allow Jones to testify and "underst[ood] they'll [the State] be allowed to go into any conversations as well." Later, however, appellant suggested "I don't believe it requires any type of waiver." That general statement was insufficient to apprize the trial court of the basis of the specific objection he now advances on appeal. In brief, appellant simply failed to inform the trial court in an effective and timely manner of his objection and entitlement to relief; thus, he preserved no error for review. Appellant's first issue is overruled.

By his second issue, appellant asserts his "[t]rial counsel was ineffective in failing to properly object to hearsay evidence that [he] had guns, and that Stacy Warden was afraid that [he] 'would pull one on her.'"[2] We disagree. In determining whether counsel's

---

[2]With this issue, appellant complains that the objectionable testimony was hearsay. In the body of his argument, however, he asserts that it was also objectionable on relevance grounds. *See* Tex. R. Evid. 403.

6

representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts adhere to the two-pronged test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)*; see* Hernandez v. State, 726 S.W.2d 53, 57 (Tex.Cr.App. 1986). Appellant must first prove that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness. *See* McFarland v. State, 928 S.W.2d 482, 500 (Tex.Cr.App. 1996). If appellant demonstrates deficient assistance of counsel, he must then affirmatively prove prejudice as a result of the deficient assistance. *Id*. In proving prejudice, appellant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Cr.App. 2002). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hernandez*, 726 S.W.2d at 55. In other words, appellant must demonstrate that the deficient performance prejudiced his defense. *Mitchell*, 68 S.W.3d at 642. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Garcia v. State, 887 S.W.2d 862, 880 (Tex.Cr.App. 1994), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). The burden is on appellant to prove by a preponderance of the evidence that counsel was ineffective. *McFarland*, 928 S.W.2d at 500.

The adequacy of defense counsel's assistance is based upon the totality of the representation rather than by isolated acts or omissions of trial counsel. *Id*. Furthermore, appellate review of trial counsel's representation is highly deferential and presumes that

counsel's conduct fell within the wide range of reasonable and professional representation. Bone v. State, 77 S.W.3d 828, 833 (Tex.Cr.App. 2002). Although the constitutional right to counsel ensures the right to reasonably effective counsel, it does not guarantee errorless counsel, whose competency or accuracy of representation is to be judged by hindsight. Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). Finally, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813 (Tex.Cr.App. 1999).

The basis of appellant's argument under this issue stems from the testimony of Shelley Cummings, Warden's roommate, who testified for the defense. Cummings, who was also at the nightclub on the night of the offense, testified on direct examination that she did not like appellant "[b]ecause of the way [she] felt he was treating Stacy and the things that were going on between them." According to Cummings, she attempted to prevent Warden from leaving the nightclub with appellant. By this issue, appellant specifically claims his counsel was ineffective for failing to properly object to the following testimony:

| | |
|---|---|
| State: | Okay. Now, you stated initially when you were asked by defense counsel how you knew the Defendant and you stated that he was a friend of yours. Okay. Then you stated later that you don't like him and he's not a friend of yours. |
| Cummings: | When I first met him, yes, we got along and we were friends, but as I got to know him, no, I did not like him. |
| State: | Why didn't you like him? |

8

Cummings: Because of the way I felt he was treating Stacy [Warden] and the things that were going on between them.

State: What was that?

Defense: Your Honor, I'm going to object to relevance.

Court: What's the relevance?

State: Judge, I believe her line of testimony is she's not letting her leave, and he [the defense attorney] was trying to explore why she didn't want her to leave. I'm just trying to explore that at this time.

Court: All right. I'll let you go into it briefly.

State: Let me ask you the question. Do you remember --

Cummings: Because from what Stacy [Warden] had talked to me and the times I talked to her on the phone, she was scared of him, and she was my best friend, and I didn't want her in jeopardy.

State: Why was she afraid of him?

Cummings: I'm not real sure. She never said. I know they fought a lot. She made comments about he had guns, and she was afraid he would pull one on her. I don't know that he ever did, but she was scared of him.

Defense: Your Honor, I'm going to object at this point. I think we're getting into this line.

Court: You need to move on.

State: So she's your close friend and your roommate, and you understand that she was afraid of the Defendant, but she hasn't fully explained to you why or just things she's shared --

Defense: Your Honor, I'm going to object, asked and answered and relevance.

Court: It's a summation question. Move on.

9

Initially, we acknowledge our authority to address an ineffective assistance of counsel claim on direct appeal where the record is sufficient to prove that counsel's performance was deficient. *See* Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex.Cr.App. 2000). Notwithstanding appellant's argument to the contrary, however, this record does not present one of those rare cases allowing us to do so. As in the majority of instances, the record here is simply undeveloped and cannot adequately reflect the failings of trial counsel, if any. *Thompson*, 9 S.W.3d at 813-14. Furthermore, the portion of the record reproduced above suggests that appellant's attorney was, in fact, alert and responsive to the prosecutor's line of questioning. Indeed, he objected either to the State's question or Cummings's response no less than three times in the space of one and a half pages of reporter's record. In any event, on this record we are not in a position to fairly evaluate appellant's claim and decline his invitation to do so. Appellant's second issue is overruled.

Accordingly, the judgment of the trial court is affirmed.


Don H. Reavis
Justice


Do not publish.


10