NO. 12-02-00376-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
EDWARD WILBANKS, JR.,                               §               APPEAL FROM THE 2ND
APPELLANT
 
V.                                                                           §               JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                          §               CHEROKEE COUNTY, TEXAS
                                                                                                                                                               

MEMORANDUM OPINION
            A jury convicted Appellant Edward Wilbanks, Jr. (“Appellant”) of the murder of Martha Ezell
and assessed his punishment at imprisonment for thirty-seven years and a $10,000 fine. Appellant
raises ten issues on appeal. We affirm.
 
Background
            Martha Ezell was shot and murdered in her home in Maydell, Texas on April 6, 1986. After
all leads had become cold and the case still had not been solved, the active investigation ended. 
            In February 2001, Appellant contacted the Cherokee County Sheriff’s Office to report that his
father, Edward Wilbanks, Sr. (“Mr. Wilbanks”), had committed aggravated assault against him. After
the case against Mr. Wilbanks was presented to the grand jury, Appellant mentioned to Captain
Jonathan Rhodes (“Rhodes”) of the Cherokee County Sheriff’s Office that he had information about
the unsolved Ezell murder. Appellant began to tell a series of four stories, each involving his father
in the murder. By the third story, Appellant was including himself in his recounting of the events
surrounding the murder, saying that he and his father were riding around, and his father went into
Ezell’s home to collect money and killed her. Appellant’s fourth story was that he went into the house
with his father and was in the house when his father killed Ms. Ezell. 
            Rhodes asked Appellant to make a pretext call to Mr. Wilbanks with the intent that Rhodes
would record the conversation, including any inculpatory statements Mr. Wilbanks might make in
response to Appellant’s preplanned questions. Appellant agreed to make the call and to attempt to get
Mr. Wilbanks to implicate himself in the murder. On the day Appellant was to make the phone call,
Appellant’s wife drove him to the sheriff’s office. Appellant then rode with Rhodes and a sheriff’s
department investigator to a nearby hotel to make the call. 
            The attempt to implicate Mr. Wilbanks did not go as expected. Although Rhodes gave
Appellant preplanned questions that could have led to inculpatory responses from Mr. Wilbanks,
Appellant did not ask the questions. Nothing Mr. Wilbanks said in the conversation suggested that he
was involved in the Ezell murder. In the course of the conversation, however, Mr. Wilbanks advised
Appellant to tell law enforcement if he (Appellant) was involved in Ms. Ezell’s death. After the phone
call, Appellant, who did not have his car with him, rode back to the sheriff’s office with the officers. 
            The recording system the officers used recorded the entire call, but the officers could not listen
to Mr. Wilbanks’s side of the conversation as it was being recorded. When they arrived at the sheriff’s
office, Appellant and the officers went inside to review the tape recording of the conversation. At that
time, the officers had not heard Mr. Wilbanks’s comments on the telephone. Consequently, the officers
still regarded Mr. Wilbanks as a suspect, due to Appellant’s previous remarks. After hearing the entire
recorded conversation between Appellant and his father, the officers asked Appellant why his father
seemed to have no reaction to questions about the murder and also asked about inconsistencies in
Appellant’s stories. Appellant became emotional and asked if they wanted to know what really
happened. He then said that he and Al Clark, Jr. (“Clark”) had murdered Ms. Ezell. After this
admission, Appellant began to cry for several minutes and then told the officers more about the murder. 
The police gave Appellant his Miranda


 warnings.
            The officers then questioned Appellant further about the events at Ms. Ezell’s house the night
of the murder. Appellant waived his right to remain silent and chose to continue speaking to the
officers about what had transpired at Ms. Ezell’s home. He said that he and Clark went into Ms.
Ezell’s house with Floyd Lusk and that during the course of the evening, Clark sexually assaulted and
shot Ms. Ezell. The officers subsequently tape recorded an oral version of Appellant’s statement, but
the quality of the recording was so poor that it was inaudible.
            Later, just before Clark’s trial for Ms. Ezell’s murder, Appellant and his lawyer were in the
Cherokee County law library together with Rhodes, the Cherokee County District Attorney, and the
District Attorney’s investigator. During the course of the conversation, Appellant volunteered that
only he and Clark had committed the crime and again admitted his involvement in the robbery of Ms.
Ezell.
            Appellant subsequently urged a motion to suppress his statements and admissions. After
conducting a hearing, the court granted the motion to suppress as to Appellant’s inaudible tape-recorded statement, but denied the motion as to Appellant’s other statements and admitted them into
evidence. 
            At trial, Rhodes testified about Appellant’s statements and the circumstances under which the
statements were made. In addition, Sandra Wells, who was outside Ms. Ezell’s house the night she was
murdered, testified that Clark and Appellant went inside, and after a time, she heard gun shots.
            The jury convicted Appellant of murder and assessed punishment at imprisonment for thirty-seven years and a $10,000 fine. This appeal followed.
 
Suppression of Appellant’s Statements
            In his first two issues, Appellant contends the trial court erred in denying his motion to suppress
and erred in admitting the witnessing officer’s testimony regarding Appellant’s statements. Appellant’s
motion to suppress alleged that Appellant’s statement


 that was taken at the sheriff’s office immediately
after the telephone call to Appellant’s father was the product of custodial interrogation and was
obtained in violation of the Texas Code of Criminal Procedure, articles 38.21 and 38.22, sections 2 and
3, as well as the United States and Texas constitutions.
Standard of Review
            We apply a bifurcated standard of review to a trial court’s ruling on a motion to suppress.
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost total deference to
the trial court’s determination of historical facts and conduct a de novo review of the trial court’s
application of the law to those facts. Id. The determination of whether a statement is voluntary is a
mixed question of law and fact, i.e., an application of law to a fact question. Garza v. State, 15 S.W.3d
533, 535 (Tex. Crim. App. 2000). Where, as here, the trial court does not file findings of fact, we view
the evidence in the light most favorable to the trial court’s ruling and assume that the trial court made
implicit findings of fact that support its ruling as long as those findings are supported by the record. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000). A trial court’s decision will then be upheld if it is correct on any theory of
law applicable to the case. Ross, 32 S.W.3d at 855.
Applicable Law and Analysis
            Article 38.21 provides that to be admissible, the statement of an accused must be freely and
voluntarily given without compulsion or persuasion. See Tex. Code Crim. Proc. Ann. art. 38.21
(Vernon Supp. 2004). Article 38.22 sets out the parameters of admissibility of a statement taken from
an accused “as a result of custodial interrogation.” See Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2,
3 (Vernon Supp. 2004). Further, article 38.22 prohibits the admission of a written statement made by
an accused as a result of custodial interrogation unless the statement shows on its face that the accused
was advised of his Miranda rights. See Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (Vernon Supp.
2004). However, article 38.22 also states that “[n]othing in this article precludes the admission of a
statement made by the accused . . . that does not stem from a custodial interrogation . . . .” Tex. Code
Crim. Proc. Ann. art. 38.22, § 5 (Vernon Supp. 2004). An oral admission against interest or an oral
confession of guilt not stemming from custodial interrogation and given freely, voluntarily, and without
compulsion or persuasion is admissible evidence against the accused. Shiflet v. State, 732 S.W.2d 622,
623 (Tex. Crim. App. 1985).
            The issue before us is whether Appellant was in custody at the time he gave his statement. A
person is “in custody” only if, under the circumstances, a reasonable person would believe that his
freedom of movement was restrained to the degree associated with a formal arrest. Dowthitt v. State,
931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing Stansbury v. California, 511 U.S. 318, 321-26,
114 S. Ct. 1526, 1528-30, 128 L. Ed. 2d 293 (1994)); see also California v. Hodari D., 499 U.S. 621,
627-28, 111 S. Ct. 1547, 1551, 113 L. Ed. 2d 690 (1991) (quoting United States v. Mendenhall, 446
U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 565 (1980)) (“[A] person has been ‘seized’ within
the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the
incident, a reasonable person would have believed that he was not free to leave.”). The determination
of whether an accused was “in custody” must be made on an ad hoc basis, after considering all of the
objective circumstances. Dowthitt, 931 S.W.2d at 255. 
            In the present case, Appellant initially went to the sheriff’s office to report an alleged
aggravated assault against him by his father. Later, after the case against his father had been presented
to the grand jury, Appellant volunteered to Rhodes that his father was involved in the Ezell murder. 
To obtain corroboration of Appellant’s statements, Rhodes suggested that Appellant make a pretext
telephone call to his father in an attempt to cause his father to implicate himself in the murder. 
Appellant’s wife drove him to the sheriff’s office where he voluntarily went with Rhodes and another
officer to a local hotel to make the call. 
            After the pretext call failed to produce any statement by Mr. Wilbanks about the murder, the
officers questioned Appellant about Mr. Wilbanks’s failure to implicate himself and the inconsistencies
in Appellant’s prior stories. Appellant then asked if the officers wanted to know what really happened
and admitted his involvement in the murder. Appellant was given the warnings required by Miranda
and made a full confession. At the time he gave his initial statement, but before being admonished
about his Miranda rights, Appellant was free to leave the sheriff’s office. There is nothing in the
record to indicate that either his presence at the sheriff’s office or his statement was not totally
voluntary. 
            The testimony at the suppression hearing supports the trial court’s ruling denying Appellant’s
motion to suppress the challenged statement. Therefore, the trial court did not abuse its discretion in
denying the motion. Further, because Appellant’s statement to Rhodes was freely made, it was
admissible into evidence at trial. Consequently, the trial court did not err in overruling Appellant’s
objection to Rhodes’s testimony. Appellant’s first and second issues are overruled.
 
Motion for New Trial Overruled by Operation of Law
            In his third and fourth issues, Appellant contends the trial court erred in permitting his motion
for new trial to be overruled by operation of law. In his third issue, Appellant specifically notes that
he had challenged the legal and factual sufficiency of the evidence in the motion for new trial. In his
fourth issue, Appellant points out that he had challenged the admission of Appellant’s statements in
the motion for new trial. 
            Initially, we observe that Appellant has provided no case law on these two issues. Further,
Appellant’s argument consists of stating that, but for the admission of Appellant’s statement, “the
remaining evidence was legally and factually insufficient to support the verdict.” Appellant presents
no case law or argument as to how the trial court erred in permitting the motion for new trial. 
            The court of criminal appeals has stated that
 
[t]he Rules of Appellate Procedure and our case law both demand that an appellant before this court
present his own case, stating his specific legal argument, specifying and citing from the record the factual
bases in the record, and argue case law, explaining its pertinence to his argument. We will not brief
appellant’s case for him. 


Garcia v. State, 887 S.W.2d 862, 882 (Tex. Crim. App. 1994). Because Appellant’s presentation of
his third and fourth issues does not include argument or authority, the issues are waived and we do not
address them. See id. Accordingly, Appellant’s third and fourth issues are overruled.
 
Legal and Factual Sufficiency
            In his fifth and seventh issues, Appellant contends the evidence is legally and factually
insufficient to support a finding that he intentionally or knowingly caused the death of an individual. 
 In Appellant’s sixth and eighth issues, he contends the evidence is legally and factually insufficient
to support a finding that he conspired to commit a felony, which supports his conviction under the law
of parties. In his ninth and tenth issues, Appellant contends the evidence is legally and factually
insufficient to support a finding that Appellant knew a deadly weapon would be used or exhibited in
the commission of the offense. Appellant briefed and argued these six issues together. Therefore, we
address them together.
Standard of Review for Legal Sufficiency
            In reviewing a legal sufficiency question, we must view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789,
61 L. Ed. 2d 560 (1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The trier of fact,
here the jury, is the exclusive judge of the credibility of witnesses and of the weight to be given their
testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). The jury is entitled to draw
reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex.
App.–Corpus Christi 1988, pet. ref’d). Likewise, reconciliation of conflicts in the evidence is within
the exclusive province of the jury. Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000);
Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Although an appellate court’s analysis
considers all the evidence presented at trial, it may not “re-weigh the evidence and substitute [the
appellate court’s] judgment for that of the jury.” King, 29 S.W.3d at 562. 
Standard of Review for Factual Sufficiency
            When reviewing the factual sufficiency of the evidence, we review all of the evidence, but not
in the light most favorable to the prosecution. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). We must determine whether a
neutral review of all the evidence, both for and against the finding, demonstrates that a rational jury
could find guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02, 2004 WL 840786, at *7 (Tex.
Crim. App. April 21, 2004). Evidence is factually insufficient when evidence supporting the verdict,
considered by itself, is too weak to support the finding of guilty beyond a reasonable doubt. Id. 
Evidence is also factually insufficient when contrary evidence is so strong that the beyond-a-reasonable-doubt burden of proof could not have been met. Id. The jury is the sole judge of the weight
and credibility of witness testimony. Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). 
Analysis 
            A person is criminally responsible as a party to an offense that is committed by his own
conduct, by the conduct of another for which he is criminally responsible, or by both. Tex. Pen. Code
Ann. § 7.01 (Vernon Supp. 2004). A person is criminally responsible for an offense committed by the
conduct of another if “acting with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the person to commit the offense.” Tex. Pen. Code Ann.
§ 7.02(a)(2) (Vernon Supp. 2004). When committing one offense, if another unintended or unplanned
offense is committed, and if that second offense should have been anticipated, all co-conspirators are
guilty of the second, unintended offense that was actually committed. Tex. Pen. Code Ann. § 7.02(b)
(Vernon Supp. 2004). In determining whether an individual bears criminal responsibility for an offense
as a party, the court may look to events occurring both during and after the commission of the offense. 
King v. State, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000). Participation may be inferred from
circumstances and need not be shown by direct evidence. Id. 
            In the present case, both Appellant, in his statement, and Sandra Wells, who testified at trial,
stated that Appellant went into Ms. Ezell’s house to rob her. Appellant admitted he was present in the
house, searched the house for valuables, and disconnected the telephone while Clark sexually assaulted
and then murdered the woman. In addition to his admission that their intent was to rob Ms. Ezell,
Appellant also admitted that he and Clark divided the money taken from the robbery. This evidence
shows that Appellant conspired and participated in the plan to rob the elderly woman. 
            During the course of the robbery, Appellant continued to scour the house for valuables while
Clark abused the woman, then sexually assaulted her, and finally shot her. Appellant did not object,
but continued with the plan and, afterward, divided the loot with Clark. Sandra Wells read her
testimony from a prior proceeding that after Appellant and Clark entered the house, Appellant came
outside and retrieved a firearm from the vehicle. The murder of Ms. Ezell was a felony committed by
Clark, but was in furtherance of the conspiracy. The murder should have been anticipated by Appellant
as a result of carrying out the conspiracy, particularly in light of the fact that Appellant retrieved the
firearm for Clark. Therefore, we hold that the evidence is legally sufficient, under the law of parties,
to support the jury’s verdict that Appellant intentionally or knowingly caused the death of Ms. Ezell. 
We also hold that the evidence is legally sufficient, under the law of parties, to support the jury’s
finding that Appellant conspired to commit a felony. Appellant’s fifth and sixth issues are overruled.
            Appellant points out that with regard to factual sufficiency, (1) Sandra Wells provided
inconsistent descriptions of the offense and was “pointedly” impeached as to her credibility and ability
to clearly remember the events comprising the offense; (2) even if Wells’s testimony is taken as
entirely truthful, she provided no evidence of intentional or knowing conduct sufficient to establish that
Appellant conspired to a degree that would support a conviction under the law of parties; (3) Floyd
Lusk, who was also present at Ms. Ezell’s house at the time of the murder, testified that Appellant was
not present when Clark murdered Ezell; and (4) Appellant made no statement to Rhodes indicating that
he knew a deadly weapon would be used or exhibited during the offense. 
            In judging the credibility of the witnesses, the jury may choose to believe all, some, or none of
the testimony presented. Wesbrook, 29 S.W.3d at 111. The jury chose, as was its prerogative, to
believe Wells’s testimony and to either disbelieve or give only slight weight to the testimony of Floyd
Lusk. See id. The jury also gave little, if any, weight to the absence of any statement by Appellant
indicating that he knew a deadly weapon would be used or exhibited during the offense. This was also
within the exclusive province of the jury. See Barnes, 876 S.W.2d at 321 (jury is exclusive judge of
witness credibility and the weight to be given witness testimony). Based upon our review of the record,
we cannot say that the evidence supporting the jury’s verdict, when considered by itself, is too weak
to support the jury’s finding of guilt or that the contrary evidence is so strong that the State could not
have met its burden of proof. We hold the evidence is factually sufficient, under the law of parties, to
support the jury’s verdict that Appellant intentionally or knowingly caused the death of Ms. Ezell. We
also hold that the evidence is legally sufficient, under the law of parties, to support the jury’s finding
that Appellant conspired to commit a felony. We overrule Appellant’s seventh and eighth issues.
            In his ninth and tenth issues, Appellant contends the evidence is legally and factually
insufficient to support a finding that Appellant knew a deadly weapon would be used or exhibited
during the commission of the murder. In support of these issues, Appellant again urges that (1) only
Sandra Wells placed Appellant at the scene of the offense and that her testimony was unbelievable; (2)
Floyd Lusk testified that Appellant was not at the scene of the murder; and (3) Appellant’s statements
indicating that he was present at the scene should not have been admitted and do not suggest that he
shot Ezell or knew that a deadly weapon would be used. 
            Appellant was charged by indictment with intentionally or knowingly causing the death of
Martha Ezell by shooting her with a firearm. The jury charge on guilt/innocence alleged that Appellant,
in conspiracy with Clark, caused the death of Martha Ezell by shooting her with a firearm, that the
shooting was done in furtherance of the conspiracy to rob Martha Ezell, and that the shooting of Martha
Ezell was “an offense that should have been anticipated as the result of the conspiracy” to rob Martha
Ezell. The jury found Appellant guilty of murder, as alleged in the indictment. On punishment, the
jury made an affirmative finding of a deadly weapon.
            Article 42.12, section 3(g)(2) provides that the court shall enter an affirmative finding of a
deadly weapon in the judgment where “it is shown that a deadly weapon as defined in Section 1.07,
Penal Code, was used or exhibited during the commission of a felony offense or during immediate
flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the
offense and knew that a deadly weapon would be used or exhibited.” Tex. Code Crim. Proc. Ann.
art. 42.12 § 3g(a)(2) (Vernon Pamph. Supp. 2004). A firearm is defined as a deadly weapon in section
1.07. Tex. Pen. Code Ann. § 1.07 (a)(17)(A) (Vernon Supp. 2004).
            Prior to the 1991 amendment of article 42.12, section 3g(a)(2), an affirmative finding of the use
of a deadly weapon could not be entered unless the defendant himself actually used or exhibited the
weapon. Johnson v. State, 6 S.W.3d 709, 714 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). The
1991 amendment expanded the scope of the law to allow entry of an affirmative finding of use of a
deadly weapon for one who was a party to a crime, as long as he knew the weapon would be used. Id. 
Now, the issue is whether the evidence justified an affirmative finding of the use of a deadly weapon,
regardless of whether that use is by the defendant or by another for whom the defendant is criminally
responsible as a party. Id.
            In the present case, the indictment charged Appellant with causing the death of Martha Ezell
by shooting her with a firearm. The application paragraph of the jury charge on guilt/innocence
instructed the jury to find Appellant guilty of murder if it found that (1) Appellant and Clark entered
into a conspiracy to rob Martha Ezell; (2) pursuant to carrying out the conspiracy, Clark shot Ms. Ezell
with a gun; (3) at the time of the shooting, Appellant was acting with and aiding Clark in the robbery
and in the shooting of Martha Ezell; and (4) the shooting of Martha Ezell was an offense that should
have been anticipated as a result of the carrying out of the conspiracy.
            The jury heard the evidence and found Appellant guilty of the offense of murder “as alleged in
the indictment.” The jury then made a separate affirmative finding, on the proper jury verdict form,
that a deadly weapon was used during the commission of the offense and that Appellant “did then and
there know that a deadly weapon would be used or exhibited.”
            The evidence showed that Appellant and Clark conspired to rob Ms. Ezell, that they went into
her house together, and that while Appellant gathered Ms. Ezell’s money and disabled the telephone,
Clark sexually assaulted Ms. Ezell. Wells read her testimony from a prior proceeding in which she
stated that Appellant came outside, retrieved a firearm from the car, and went back inside the house. 
Using that firearm, Clark shot Ms. Ezell numerous times in the head. Appellant and Clark then left
with their friends and divided the money taken as a result of their conspiracy. 
            We have held that the evidence is legally and factually sufficient, under the law of parties, to
support the jury’s verdict that Appellant intentionally or knowingly caused the death of Ms. Ezell. We
have also held that the evidence is legally and factually sufficient, under the law of parties, to support
the jury’s finding that Appellant conspired to commit a felony. The evidence reviewed in connection
with these holdings is legally and factually sufficient to support the jury’s affirmative finding that
Appellant knew that a deadly weapon would be used or exhibited. Therefore, the trial court did not err
by including a deadly weapon finding in the judgment based upon Clark’s use of a deadly weapon to
kill Ms. Ezell. Appellant’s ninth and tenth issues are overruled.
 
Conclusion
            Having held the trial court did not err in denying Appellant’s motion to suppress the statement
he made to sheriff’s officers immediately following the pretext call to Mr. Wilbanks and also having
held that the evidence is legally and factually sufficient to support Appellant’s conviction, the judgment
of the trial court is affirmed.
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice



Opinion delivered August 31, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
















(DO NOT PUBLISH)