Opinion issued April 12, 2007











 





In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00209-CR






ALVIN SCOTT, JR., Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 1021167




 

MEMORANDUM OPINION Appellant, Alvin Scott, Jr., was charged by indictment with murdering the
complainant, Larry Porche, with a deadly weapon, namely, a firearm. See Tex. Pen.
Code Ann. § 19.03 (Vernon Supp. 2006). Appellant pleaded not guilty. A jury
found appellant guilty as charged and assessed punishment at 15 years' confinement. 

 In three issues, appellant contends that (1) the trial court erred by allowing the
State "to put on Chris Burrell, its key witness, when it knew Burrell was hostile and
the sole purpose in putting him on was to introduce his prior inconsistent statement
under the subterfuge of impeachment"; (2) that, "[t]o the extent it is deemed that the
appellant's trial counsel waived error under [issue one] for failing to make the proper
objection at the proper time, the appellant's trial counsel rendered ineffective
assistance of counsel," and (3) appellant received ineffective assistance of counsel
because his trial counsel "fail[ed] to request a limiting instruction as to Chris
Burrell's prior inconsistent statement." 

 We affirm.

Background 

 Appellant does not dispute that he shot the complainant. Appellant contends,
however, that the shooting was in self-defense.

 On March 23, 2005, appellant went to the Family Dollar store where his niece,
Naomi Porche, had been working for a couple of weeks. Naomi is the complainant's
wife. According to appellant, he peacefully inquired about Naomi, was told that she
was not there, and left. According to Naomi, appellant caused a disturbance in the
store that resulted in her boss voicing some doubt about being able to retain Naomi
as an employee. Naomi went home that night and told the complainant.

 The next day, appellant went to his mother's house and visited with his
nephew, Chris Burrell. According to appellant, he and Chris were outside looking
at Chris's car when the complainant drove up, parked behind Chris's car, and got out
"cussing" at appellant, saying that he "did wrong." Appellant retreated into the street
as the complainant approached him. Appellant insisted that he did not know what the
complainant was talking about and told the complainant to leave. The complainant
followed appellant, continuing to curse at him. Appellant testified that, at some point,
he might have told the complainant to "stay there." According to appellant, the
complainant then said, "F- - - that, then I'll kill your ass." The record shows that the
complainant apparently believed that appellant had caused Naomi to lose her job.

 Appellant testified that each of them went to their respective cars. Appellant
testified that he believed that the complainant had a violent personality and that he
owned a sawed-off shotgun. Appellant stated that he feared for his life because he
thought that the complainant was getting his gun. Appellant retrieved a handgun
from his own trunk, took a couple of steps forward, and fired at the complainant,
believing that the complainant was going to fire first.

 

 Appellant testified that he did not hear the complainant start his car, but that
the complainant was seated in the driver's seat at the time appellant fired. Appellant
testified that he "was just trying to scare [the complainant] away," but "talked
[him]self into hitting him in the shoulder or something." After appellant shot the
complainant, the complainant drove away. Appellant placed the handgun back into
his trunk and left quickly because he believed that the complainant was going to get
his "posse." It was appellant's testimony that, throughout the incident, Chris stood
off to the side and watched. 

 Chris likewise testified that he and appellant were outside looking at Chris's
car when the complainant "came up real fast" and parked behind Chris's car. The
complainant immediately got out of his car and "started cursing at" appellant, saying,
"Man, you got my mother-f- - -ing wife fired. What you did was real f- - -ed up. You
didn't have to do that s- - -. Why did you do that?" Appellant responded, "I didn't
do a mother-f- - -ing thing" and told the complainant to leave. Chris testified that
appellant and the complainant each went to their respective cars at the same time and
that they each appeared to be looking for something. However, Chris initially
testified that the complainant reached into his car through the passenger-side window. 
Then, Chris inconsistently testified that the complainant got into the driver's seat,
started the car, and then started reaching around.

 The State impeached this testimony with Chris's statement to Detective K.
Widner, Jr., of the Baytown Police Department, given on March 24, 2005, in which
Chris reported that the argument escalated until appellant told the complainant to
"wait right there." Appellant then went across the street to his car and looked around
in the trunk. The complainant waited for appellant to return, and Chris urged the
complainant to leave. Chris stated that, moments later, appellant emerged with a
pistol and started back across the street toward the complainant. Chris stated that, at
that point, the complainant retreated to his car, while taking out his keys. 

 Chris maintained, throughout his earlier statement and at trial, that once
appellant found his pistol, he took a few steps toward the complainant, who was in
his car with the engine running at that moment, and then shot the complainant. Chris
saw the complainant "jerk" like he had been hit, and the complainant drove away. 
Chris testified that he never heard the complainant threaten appellant and never saw
the complainant with a weapon. 

 After the shooting, the complainant drove a short distance and crashed into a
tree. Laura Benoit, one of the neighbors who rushed out to help the complainant,
testified that she did not see a handgun in his car. Dr. Stephen Wilson, a medical
examiner at the Harris County Medical Examiner's Office, testified that the bullet
caused the complainant's death when it punctured his right side at his armpit, moved
through his chest, perforating both lungs, and lodged in his left shoulder. Jason
Schroeder, a forensic chemist at the Harris County Medical Examiner's Office,
testified that the shot was most likely fired within six feet of the complainant's car.
Detective Charles K. Widner, Jr., of the Baytown Police Department, interviewed
Chris Burrell and took written and videotaped statements. Widner testified that there
was no evidence that anyone at the scene other than appellant had a weapon. 
Appellant turned himself in to police. There was testimony at trial from several
witnesses that appellant is not a violent person and has a reputation for being a
peaceful person in the community.

Impeachment

 In his first issue, appellant contends that the trial court abused its discretion by
allowing the State "to put on Chris Burrell, its key witness, when [the State] knew
Burrell was hostile and the sole purpose in putting him on was to introduce his prior
inconsistent statement under the subterfuge of impeachment." (1) 

 Texas Rule of Evidence 607 expressly allows the credibility of a witness to be
attacked by any party, including the party that called the witness. Tex. R. Evid. 607.
However, the State may not call a witness whom it knows to be hostile for the
primary purpose of eliciting otherwise inadmissible impeachment evidence. Hughes
v. State, 4 S.W.3d 1, 4-5 & n.4 (Tex. Crim. App. 1999); Barley v. State, 906 S.W.2d
27, 37 n.11 (Tex. Crim. App. 1995). To preserve a complaint that the trial court erred
in admitting evidence, the error must have been preserved by making a proper
objection and by obtaining an adverse ruling on that objection. Tex. R. App. P. 33.1. 
In addition, the error alleged on appeal must comport with the objection at trial. 
Barley, 906 S.W.2d at 37.

 The record reflects that Chris was the only witness, other than appellant, who
could testify to the events surrounding the shooting. Appellant did not object when
the State called Chris to testify. When Chris took the stand, it was established that
he did not want to testify--for the reason that he did not "like law in general," that
it was personal, and had "nothing to do with the whole situation." Chris testified that
he did not have anything against appellant or the complainant. Chris denied being
able to recall what he had said in his written and videotaped statements. Outside the
presence of the jury, Chris was permitted to read his statement and was shown his
videotaped statement. These statements were not offered into evidence.

 Appellant directs us to specific portions of Chris's testimony, from which he
extensively quotes. During this testimony, the State asked Chris several times about
the content of his statement to Detective Widner. Appellant made several objections
to form on the basis that the State was improperly going into the content of the
statement before asking Chris to testify. On one occasion, the trial court sustained
the objection, but appellant did not request an instruction to disregard.

 In addition, during this testimony, the State asked Chris whether he recalled
telling Detective Widner that appellant had told the complainant to "wait right there"
before going to retrieve the handgun. Appellant objected on the basis of leading and
"under 403 because he's going into this witness's statement," which the trial court
overruled. However, appellant follows this excerpt in his brief with the statement
that, "So far, the trial court's ruling is probably correct." 

 Thereafter, the only other objection, other than to leading, that appellant's
excerpts of Chris's testimony show is one occasion in which the State asked Chris,
"Isn't it true in your statement, in fact, you said that [the complainant] was standing
right there next to you and you were telling him, man, you better leave?" Appellant
objected "to that question under Rule 403," which the trial court overruled. 

 The record does not reflect that appellant objected at any time that the State had
called Chris to testify "for the sole purpose" of impeaching him, as is contended on
appeal. We conclude that appellant has not preserved error and that the objections
made at trial do not comport with the complaint on appeal. See Tex. R. App. P. 33.1;
Barley, 906 S.W.2d at 37.

 Moreover, even if we were to conclude that appellant preserved error,
appellant's complaint that the State called a witness it knew to be hostile and for the
primary purpose of eliciting otherwise inadmissible impeachment evidence is without
merit. Appellant contends that "the prosecutor in this case did exactly what Hughes
v. State says he could not." See Hughes, 4 S.W.3d at 4-5 (explaining that prosecution
may not call witness whom it knows to be hostile for the primary purpose of eliciting
otherwise inadmissible impeachment evidence). However, this case is distinguishable
from Hughes because, here, the State had reasons for calling Chris other than to elicit
impeachment evidence. Cf. id. (considering whether record reflects that other
testimony, favorable to State's position, was elicited). As appellant himself states
on appeal, Chris was a "key witness." Chris was the only person, besides appellant,
who could testify to all of the events that transpired from the time the complainant
arrived, until the shooting. The State extensively questioned Chris about the events
before and after the shooting, and the testimony comprised almost 80 pages of record
developed over two days. A photographic exhibit of the scene was admitted and
Chris explained to the jury the course of events in relation to the photograph via a
television screen. Chris provided testimony, independent of his prior statement, that
the complainant was seated in the driver's seat of his car, with the engine running,
and appellant "just walked up to him and shot him." Chris testified that he never
heard the complainant threaten appellant and never saw the complainant with a
weapon. Hence, Chris provided important testimony that went beyond his prior
statement to the police. 

 In addition, to show that the State called Chris solely for the purpose of
impeachment, appellant would need to show that the State knew in advance that Chris
would recant part of his statement. See Barley, 906 S.W.2d at 37 n.11 (explaining
that, in those cases in which the State was deemed to have "known," the witness had
already recanted in prior sworn testimony at previous trial or hearing). Here, as
outlined above, Chris's stated reluctance to testify at the beginning of direct
examination does not, as appellant contends, indicate that Chris intended to recant his
prior statement to the police. In addition, Chris did not, until near the end of his
direct examination, testify that he had lied to Detective Widner because he feared that
he would be blamed for the complainant's death. Chris also testified that this
statement that he lied was the first time that he had revealed this fact.

 Accordingly, appellant's first issue is overruled. 

Ineffective Assistance of Counsel

 In his second issue, appellant contends that, "to the extent it is deemed that the
appellant's trial counsel waived error under point of error number one for failing to
make the proper objection at the proper time, the appellant's trial counsel rendered
ineffective assistance of counsel." 

 Appellant was entitled to reasonably effective assistance of counsel. U.S. 
Const. amend. VI; Tex. Const. art. I, § 10. The right to counsel, however, does not
mean the right to errorless counsel. Robertson v. State, 187 S.W.3d 475, 483 (Tex.
Crim. App. 2006). To prove ineffective assistance of counsel, appellant must show
that (1) counsel's performance fell below an objective standard of reasonableness and
(2) but for counsel's unprofessional error, there is a reasonable probability that the
result of the proceeding would have been different. Strickland v. Washington, 466
U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Hernandez v. State, 988 S.W.2d 770,
770 n.3 (Tex. Crim. App. 1999). 

 To prevail, appellant must prove ineffective assistance by a preponderance of
the evidence. Robertson, 187 S.W.3d at 483. Appellant must overcome the strong
presumption that counsel's conduct falls within the wide range of reasonably
professional assistance or might reasonably be considered sound trial strategy. 
Robertson, 187 S.W.3d at 482; Gamble v. State, 916 S.W.2d 92, 93 (Tex.
App.--Houston [1st Dist.] 1996, no pet.).

 Allegations of ineffectiveness must be firmly founded in the record. Bone v.
State, 77 S.W.3d 828, 833 & n.13 (Tex. Crim. App. 2002). Ordinarily, the record on
direct appeal is undeveloped and cannot adequately reflect the motives behind trial
counsel's actions. Rylander v. State, 101 S.W.3d 107, 110-11 (Tex. Crim. App.
2003). A failure to make a showing under either prong of the Strickland standard
defeats a claim of ineffective assistance of counsel. Id.

 Appellant broadly states that his trial counsel "failed to make the proper
objections at the proper time" without stating any specific objection or when it should
have been made, and without providing any authority to support his specific
contention. Appellant's argument is inadequately briefed and presents nothing for
review. See Tex. R. App. P. 38.1(h); Russeau v. State, 171 S.W.3d 871, 881 (Tex.
Crim. App. 2005). 

 Even if we were to attempt to address appellant's contentions, the record is
silent concerning trial counsel's reasons for a lack of any objection. See Gamble, 916
S.W.2d at 93. Appellant did not file a motion for new trial, in which counsel's
reasons could have been developed on the record. Without testimony from trial
counsel, appellant has not met his burden to overcome the strong presumption that
counsel's conduct falls within the wide range of reasonable professional assistance 

or that counsel could have acted pursuant to sound strategy. See Robertson, 187
S.W.3d at 482; Gamble, 916 S.W.2d at 93; see also Thomas v. State, 886 S.W.2d 388,
392 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd) (explaining that failure to
object to improper testimony can constitute reasonable trial strategy).

 Accordingly, appellant's second issue is overruled.

Limiting Instruction

 In his third issue, appellant contends that he received ineffective assistance of
counsel because his trial counsel failed to request a limiting instruction "that would
have prevented the jury from using [Chris's] statements as substantive evidence of
the appellant's guilt." 

 Chris's prior, out-of-court statements to police, if offered to prove the truth of
the matters asserted, likely constituted inadmissible hearsay. Tex. R. Evid. 801, 802. 
As such, the statements were subject to a limiting instruction. Tex. R. Evid. 105(a).


The record shows that, in the charge, the trial court instructed the jury that


 the testimony of the witness, [Chris], regarding the statements of the
witness [Chris], was admitted for the purpose of impeaching the said
witness, [Chris], if you find it does impeach him, and you cannot
consider said impeachment testimony as any evidence whatsoever of the
guilt of the defendant.

 Appellant complains that his counsel did not request a limiting instruction at
the time that Chris's testimony regarding his prior statements to the police were
admitted. The Court of Criminal Appeals has construed rule 105(a) to require that
a party opposing evidence must object and request a limiting instruction when the
evidence is introduced. Hammock v. State, 46 S.W.3d 889, 894 (Tex. Crim. App.
2001); Garcia v. State, 887 S.W.2d 862, 878 (Tex. Crim. App. 1994). As appellant
contends, when his counsel failed to request a limiting instruction at the first
opportunity, the evidence was admitted for all purposes. See Hammock, 46 S.W.3d
at 895; Garcia, 887 S.W.2d at 878. 

 As in issue two above, however, the record is undeveloped as to counsel's
reasons for not requesting a limiting instruction as to the use of Chris's prior out-of-court statements to the police at the time the statements were admitted. Appellant did
not file a motion for new trial, in which counsel's reasons could have been developed
on the record. Without testimony from trial counsel, appellant has not met his burden
to overcome the strong presumption that counsel's conduct falls within the wide
range of reasonable professional assistance or that counsel could have acted pursuant
to sound strategy. See Robertson, 187 S.W.3d at 482; Gamble, 916 S.W.2d at 93; see
also Howland v. State, 966 S.W.2d 98, 105 (Tex. App.--Houston [1st Dist.] 1998),
aff'd, 990 S.W.2d 274 (holding that not requesting limiting instruction can constitute
sound trial strategy). 

 However, even if we were to conclude that counsel's performance was not
within the broad range of sound professional assistance, appellant has not
demonstrated that there is reasonable probability that the result of the proceeding
would have been different if appellant's counsel had sought to limit the use of Chris's
statements to the police sooner than in the jury charge. See Strickland, 466 U.S. at
687, 104 S. Ct. at 2064; Hernandez, 988 S.W.2d at 770 n.3. Appellant complains that
his self-defense theory was defeated when his counsel failed to seek to limit, at the
time it was admitted, Chris's testimony concerning his statements to the police. Such
testimony, however, was not the only evidence that could have defeated appellant's
self-defense theory. 

 The record shows, through appellant's own testimony, that the complainant
was seated in his car with the engine running at the time appellant shot him. 
Appellant testified that he "was just trying to scare [the complainant] away," but
"talked [him]self into hitting him in the shoulder or something." (Emphasis added).
In addition, Chris maintained throughout his testimony that once appellant found his
pistol, he took a few steps toward the complainant, who was in his car with the engine
running, and then shot the complainant. Chris testified that he never heard the
complainant threaten appellant with a weapon. Furthermore, Chris testified that the
complainant had parked so close to Chris's car that a person could not have walked
in between the cars, but that, when appellant shot him, the "car moved forward" and
the complainant drove away. This testimony suggests that the complainant had
already backed up and was leaving the scene at the time he was shot. 

 We conclude that it is not reasonably probable that the outcome of appellant's
trial would have been different had the jury heard the limiting instruction at the time
that Chris's testimony concerning his prior statements to police was admitted. We
hold that appellant did not satisfy his burden under the second prong of Strickland. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Hernandez, 988 S.W.2d at 770 n.3. 

 Accordingly, appellant's third issue is overruled.

Conclusion

 We affirm the judgment of the trial court.


 

 Laura Carter Higley

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).
1.